In re Estate of Clarence J. Artz, deceased.

Edith M. Artz, individually and as executrix of estate of Clarence J. Artz, appellant, v. Johanna E. Logan et al., appellees.

Nos. 50718
. 50807.

(Reported in 120 N.W.2d 418)

MARCH 12, 1963.

Pryor, Riley, Jones & Walsh, of Burlington, for appellant.

Gibson, Stewart & Garrett, of Des Moines, and Dailey, Dailey & Peterson, of Burlington, for appellees.

LARSON, J.—The issue on this appeal from adverse rulings upon two applications in probate is whether by this will and codicil Clarence J. Artz, deceased, sufficiently expressed his desire as to what funds were first to be used for the payment of debts, costs of administration and for federal estate taxes. By agreement the matter was tried as a matter in equity. The trial court held the direction sufficiently clear that they were to be paid from the proceeds of the personal property bequeathed to his spouse, and denied her application for apportionment of the federal estate tax. She appeals.

Clarence J. Artz died testate on November 6, 1959. He was survived by his widow, Edith M. Artz, the executrix and appellant herein, a sister Johanna E. Logan and her son R. Hiram Hoxie, whom for the sake of convenience we shall refer to as objectors. Decedent and appellant had no children.

Decedent's will dated September 8, 1956, omitting formal parts, provided:

"FIRST: I direct the payment of my just and lawful debts, including those incurred by reason of my last illness and funeral.

"SECOND: I give, devise and bequeath to my wife, Edith M. Artz, provided she is living at the time of my death, to be hers absolutely, my homestead in Burlington, Iowa, and the household effects situated therein.

"THIRD: All the rest and residue of my property which I now have or may hereafter acquire, whether realty, personalty or mixed, and wheresoever situated, I give, devise and bequeath in equal, undivided shares as follows:

"An undivided one-half to my wife, Edith M. Artz, in lieu of dower, marital deduction, or community property.

"Of the other undivided one-half, I give, devise and bequeath the personalty to my sister, Johanna E. Logan of Des Moines, Iowa, or in the event of her death to her son, R. Hiram Hoxie, and in the event that he is not living, to his issue, and in

the event. that there be no issue, then as provided in paragraph Sixth.

"The undivided one-half of the realty not devised to my wife I give, devise and bequeath as set out in the following paragraph:

"FOURTH: I give, devise and bequeath to my wife, Edith M. Artz, so long as she remains my widow, the life use and enjoyment of the other one-half of the real estate not heretofore devised to her. She shall have the full management of the same, shall receive the full income therefrom, is to pay the taxes and insurance and keep the property in reasonable repair. The said property, the use of which is devised herein, is described as follows: [Legal description of Iowa and Illinois farm properties].

"FIFTH: After the death of my wife, or her remarriage, so that the life estate has ceased as to the real estate described in the preceding paragraph, then and in that event I give, devise and bequeath the property described in the preceding paragraph to my nephew, R. Hiram Hoxie of Des Moines, Iowa, subject however to the life use of said property which life use I give, devise and bequeath to my sister, Johanna E. Logan of Des Moines, Iowa. In the event that my nephew R. Hiram Hoxie is not living at the time of my death, then the fee of the property described shall descend to his issue, and in the event that there be no issue, then as provided in paragraph Sixth."

By paragraph Sixth it is provided that in the event his wife predeceased him "all the foregoing devises and bequests shall be null and void", and he disposes of his estate one half to his sister, Johanna, or his nephew, R. Hiram Hoxie, and the other undivided half to the daughter of his wife by a prior marriage or her children. By the Seventh paragraph testator provides that in the event the property is distributed in accordance with the Sixth paragraph, he leaves the household goods in the homestead to the stepdaughter and directs the sale of the homestead with the proceeds to go into the personal property or to "be used for the purpose of paying estate taxes." By the Eighth paragraph he nominates his wife as executrix without bond.

On June 4, 1958, testator executed a codicil, which provides:

"ONE. Realizing that expenses and inheritance taxes will

largely exhaust my personalty, I do hereby revoke that portion of the THIRD item of my will which reads as follows:

" 'Of the other undivided one-half, I give, devise and bequeath the personalty to my sister, Johanna E. Logan of Des Moines, Iowa, or in the event of her death to her son R. Hiram Hoxie, and in the event that he is not living, to his issue, and in the event that there be no issue, then as provided in paragraph Sixth.'

"In lieu of the provision above, I give, devise and bequeath the other undivided one-half of the personalty to my wife Edith M. Artz.

"All the other provisions of my will except as herein modified, are ratified and confirmed."

The will and codicil were admitted to probate November 23, 1959, and the widow was appointed and qualified as executrix on the same day.

The inventory discloses the value of the real estate at $423,400 and the personalty at $116,044.82. The debts of decedent were listed at $27,327.49, cost of administration $23,-230.77, last illness and funeral expenses $986.44, and the federal estate taxes at $50,892.06, or a grand total of $102,436.76.

Prior to the application of the executrix to sell real estate to pay the federal estate taxes and costs of administration on January 18, 1961, which gave rise to this controversy, she had made application to make sale of all corporate stock "for the purpose of payment of inheritance and succession taxes." This was later withdrawn, and we attach little or no significance to these transactions by the executrix in this litigation.

The issue raised by subsequent applications, amendments and resistances, the trial court found, was "From what source are the funds to be obtained to pay the costs, debts, and taxes?" We concur generally with that conclusion. The executrix alleged in her application that the provisions for the widow constituted devises and bequests which are not subject to the payment of those items; that therefore the funds must be obtained from the sale of the real estate included in the residuary devise, reserving to the widow her interest in an amount equaling the value of her fee title and life interest in the portions sold.

The objectors-appellees, being persons other than the widow entitled to the residuary devise, alleged that by direction in the codicil the executrix is required to pay such items from the proceeds of the sale of the personal property, that the will and codicil were ambiguous, and that its language should be construed. This the executrix denied, and the issue was submitted to the court which rendered its decision October 31, 1961.

The widow accepted the terms of the will and codicil orally in open court, and while the applications were made by the executrix as such, the widow's obvious interest in the personalty properly bequeathed to her is vitally affected. Thus we will, for convenience, refer to the applicant as the widow.

■ I. There seems to be no controversy as to the general rules involved in this matter. It is conceded, in the absence of any contrary intent appearing in the will, that the personal property generally bequeathed is the primary fund to be used for debts, costs and taxes. Wilts v. Wilts, 151 Iowa 149, 154, 130 N.W. 906, 908; In re Estate of Brackey, 166 Iowa 109, 113, 147 N.W. 188, 190; Annotations at 5 A. L. R. 488, 120 A. L. R. 577; In re Estate of Ritter, 239 Iowa 788, 798, 32 N.W.2d 666, 671, 2 A. L. R.2d 1301.

■ It is also conceded a widow who elects to take under the terms of a will instead of claiming her distributive share is presumed to take by purchase rather than by gift, and she is entitled to receive what she paid for. Nolte v. Nolte, 247 Iowa 868, 879, 76 N.W.2d 881, 56 A. L. R.2d 854; In re Estate of Hartman, 233 Iowa 405, 409, 9 N.W.2d 359. It is noted, however, we said in the Hartman case this presumption does not prevail where the will *clearly discloses* that the testator intended the provisions for his wife should not be preferred over other legacies. Thus we must look to the will and codicil to determine whether their language discloses an intent to prefer any beneficiary and, if so, to what extent.

■■ II. Here, as in most will cases, the primary and controlling consideration "is the determination of the intention of the testator. When that has been done the intention must be made effective if it is a lawful one, and not against public policy. The intention of the testator must be ascertained from the will

itself and from nothing else, if its language is plain and unambiguous. Where the intention is thus clearly and unequivocally expressed there is no need for judicial construction or extrinsic evidence, and all other rules of testamentary interpretation are inapplicable and must yield. The intention must be that which is manifest from the express language of the will or by necessary implication." In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W.2d 799, 801, and citations.

On the other hand we have said, where the language is doubtful or uncertain, extrinsic evidence may be received, not to vary the effect of the language used, but to disclose the circumstances under which the will was made and thus throw light upon the testator's intent. Wright v. Copeland, 241 Iowa 447, 452, 41 N.W.2d 102. An attempt by the court to reach the same conclusion under both of these rules gave rise to this controversy.

III. The general rule is that such an instrument must be taken by its four corners and each paragraph read in the light of the other provisions in order to gain an understanding of what testator meant by the designations and references used. In re Estate of Ritter, supra; 57 Am. Jur., Wills, section 1137; 95 C. J. S., Wills, section 591; In re Will of Richter, 212 Iowa 38, 234 N.W. 285.

It is axiomatic that a will and its codicil are to be read and construed together as one instrument executed on the date of the last codicil, unless manifest intention of the testator is to the contrary. In re Estate of McCulloch, 243 Iowa 449, 52 N.W. 2d 67; Blackford v. Anderson, 226 Iowa 1138, 286 N.W. 735; In re Estate of Thomas, 220 Iowa 50, 261 N.W. 622; 57 Am. Jur., Wills, section 608; 95 C. J. S., Wills, section 625.

These well settled rules are conceded by the parties, but they part company on the application of those rules to the facts at hand.

IV. Slightly confusing is the position taken by the respective parties. The widow, the appellant herein, contends the language of the will and codicil is clear, plain and unequivocal. The objectors contend it is ambiguous and doubtful and that the court properly admitted extrinsic evidence as to the surrounding circumstances when testator executed the codicil.

Although the trial court expressed its belief that the language of the instrument was sufficiently clear, and was inclined to hold that the words of the codicil did satisfactorily express "the belief and intention" that the personalty was to be first used to meet the estate obligations, including estate taxes, it also found them ambiguous and attempted to resolve that ambiguity through the use of extrinsic evidence.

Appellant contends, with merit, that this instrument cannot be both clear and ambiguous, that under the Hartman and Nolte cases if it (the will and codicil read together) does not, in sufficiently clear and explicit terms, indicate a contrary intention, the provisions made for the widow in lieu of dower and other rights are preferred, and the general rules as to abatement of costs, taxes, etc. do not apply. Section 633.2, Code, 1958, 1962; Nolte v. Nolte, supra, 247 Iowa 868, 875, 76 N.W.2d 881, 56 A. L. R.2d 854; In re Estate of Hartman, supra, 233 Iowa 405, 9 N.W.2d 359.

We believe the language of the will and codicil is sufficiently clear and explicit and indicates an intention of the testator that the general rules of abatement apply, that the provisions for his wife should not be preferred over other legacies except for the residue after the payment of costs, debts and taxes, and that his personalty was the fund designated for the payment of the estate's "expenses and inheritance taxes."

While the learned trial court answered the question, "Are the provisions in the instruments indefinite, obscure, doubtful or ambiguous?" in the affirmative, and much of this controversy revolves about that determination, we do not intend to become mired in that dispute. It must be conceded that if the language used did not in sufficiently clear and explicit terms indicate that the personal property bequeathed to his widow should not be preferred over other legacies, the appellant would take it as part of the purchase price for the extinguishment of dower.

It is said in In re Estate of Hartman, supra, 233 Iowa 405, 409, 9 N.W.2d 359, 362: "The widow, by the payment of consideration, i.e., the relinquishment of her dower, is treated not as a mere beneficiary but as a quasi creditor. * * * By accepting the provision the widow agrees to the terms, relinquishes her

dower, and is entitled to the price in preference to those having no legal claim against the estate, whom the testator might have excluded from his bounty. It is, in effect, a matter of contract between husband and wife. * * * *The rule does not prevail, however, where the will clearly discloses that the testator intended that the provision for his wife should not be preferred over other legacies.*" (Emphasis supplied.)

The language used in the will and codicil, we think, disclosed such an intent. The words of introduction in the codicil, "Realizing that expenses and inheritance taxes will largely exhaust my personalty * * *" cannot be ignored. They indicate testator's awareness or knowledge of the extent of his personal property and of the probable estate expenses, that the general rule of abatement provided that personalty be first used for the payment of such expenses, that he desired *all* the residue of those funds become the sole property of his wife, and that some disposition other than that provided by the Hartman rule be made. Unless the reason and purpose were to express an intention that the proceeds of the personalty be used for the "expenses and inheritance taxes", why did he make reference to them and use the phrase at all? What other purpose would it serve? What other reason would be logical? Appellant suggests none, and we find none.

Carefully analyzed, no other conclusion seems reasonable. Had testator desired his widow to have one half or all the personal property, no reference to its use for expenses and inheritance taxes would have been called for. It must be presumed he did no useless thing by including that explanatory phrase. True, we could speculate that he was not aware of the status of property bequeathed in lieu of dower, and knew of no way to prefer his wife as to personal property, but such speculation is scarcely sufficient to overcome the presumption that he knew the law. In addition, it appears he had the benefit of able counsel. Nothing appears to justify an inference of ignorance.

This is not a question of preference, for what testator did is not inconsistent with a desire to prefer her and yet direct the estate expenses be first paid from the personalty. Nor is it inconsistent to find he changed his offer to his wife by so providing

in the codicil. The offer in lieu of dower certainly could be altered anytime by appropriate words in a codicil, and we think it was here.

While it is true testator could have been a bit more explicit, there is no such doubt as would call for a judicial pronouncement of ambiguity. Had testator made no such statement in the instrument, it is clear the widow would have been preferred and none of the personalty would be available to pay expenses and inheritance taxes. As the will stood before the codicil was executed, she would have taken one half the personalty, even though in the third paragraph he gives "all the rest and residue of my property" to designated devisees, which would under the general rules of abatement call for its use to pay costs, debts and taxes of the estate. Wilts v. Wilts, In re Estate of Brackey, In re Estate of Ritter, and In re Estate of Hartman, all supra.

His codicil clearly indicated a changed intention and, while adding to the bequest to his widow, it sufficiently designated that the personalty was not to be hers in preference over the estate's expenses and inheritance taxes. To that extent the codicil did change the presumed intent that it was all to be taken in lieu of dower.

True, the codicil also states: "All the other provisions of my will except as herein modified, are ratified and confirmed", and it may be argued he meant to prefer his wife as to the first one half devised to her. Appellant did not urge this point below and the trial court did not attempt to consider it. Neither do we. We are satisfied, however, testator meant to make but two changes in his will by adding the codicil. He added to the widow's bequest the other undivided one half of his personalty, and sufficiently indicated his intent that the personalty be subject to debts and taxes. Both changes were permissible and logical, and do not, except as to those expenses, deprive the devisee of any property bequeathed to her. He wanted her to have *all* that remained, not one half thereof, which would have occurred had he designated the personal property for such expense and had not increased her bequest.

V. It is also true the trial court predicated its acceptance of extrinsic evidence upon the premise that there was an

ambiguity, but unless such evidence was used to find an intention different from the plain language of the will and codicil, the error would not be prejudicial. The rule is expressed in 95 C. J. S., Wills, section 592, page 778, where it is said: "Where, however, the testator's intention is plainly expressed in the will, and the language used therein is clear and unambiguous, extrinsic circumstances will not be considered in construing the will, and the court cannot deduce from the surrounding circumstances an intention differing from the clear language of the will. Surrounding facts and circumstances are considered by the court to resolve what is uncertain in the will and not to contradict what is plain or to substitute or insert new matter."

Here no such attempt was made and no such finding resulted. The sole question is whether the express terms in the codicil were sufficiently clear to avoid the rule which would prefer the bequest to the widow. The evidence did not tend to alter or contradict the express desire that the personalty be used for expenses and inheritance taxes, regardless of to whom it was bequeathed. That intention governs.

VI. In view of our conclusion above, little consideration need be given to the widow's appeal from a denial of her application for apportionment of federal estate taxes. The sole issue in this appeal, which was consolidated with the above-considered application for will construction, is whether the trial court erred in denying this application.

While we had often considered the equitable contribution theory in other equity matters, until recently we had not passed upon the right of apportionment of federal estate taxes in estate matters. In Kintzinger v. Millin, 254 Iowa 173, 190, 117 N.W.2d 68, 78, we considered a claim by the executors of LaVern G. Millin for apportionment of taxes generated by an inter vivos gift made before testator's death, and held it was more just and equitable "in the absence of a contrary direction in the will" to require the donee of the gift to reimburse the executor to the extent of the estate tax generated by it.

Appellant's contention here is that, since the federal estate tax is largely generated from the bequests to Johanna E. Logan and R. Hiram Hoxie, the court should apportion this tax and

that the objectors be required to reimburse the executor to the extent of the estate tax generated by that bequest. It was pointed out that, due to the widow's marital deduction, the doctrine of equitable contribution is particularly applicable, for nearly all the property devised to her was free from the federal estate tax. They cite McDougall v. Central National Bank, 157 Ohio St. 45, 104 N.E.2d 441, 445, and "How to Plan for Apportionment of Estate Taxes" by William P. Sutter, page 2150, along with our Kintzinger case, as support for their proposition.

The trial court did not have the benefit of the Kintzinger case when it rendered its decision denying the widow's application and held that, until Iowa enacts an apportionment statute, the common-law rule applied by the Illinois Supreme Court in People v. Northern Trust Co., 289 Ill. 475, 124 N.E. 662, 7 A. L. R. 709, governed, and equitable apportionment could not be allowed in this case. The court would have no doubt held otherwise had it had the benefit of the Kintzinger case which now recognizes that right without statutory provisions. At any rate that is now the law in Iowa as it is in most states which have passed on the subject since Riggs v. Del Drago, 317 U. S. 95, 97, 63 S. Ct. 109, 110, 87 L. Ed. 106, 110, 142 A. L. R. 1131, 1132. Also see annotation, 16 A. L. R.2d 1282; 47 C. J. S., Internal Revenue, section 776; 37 A. L. R.2d 199; 1962 A. L. R.2d Supplement Service, Volumes 1–80; In re Barrett's Estate, 169 Neb. 557, 100 N.W.2d 526, and citations.

Although in error as to the right of equitable contribution in estate matters, the learned trial court was not wrong in denying the application on the ground that the will designated the fund from which the executrix was to pay the federal estate tax, as determined by the court order of October 31, 1961, so holding.

On page 190 of 254 Iowa, page 78 of 117 N.W.2d, in Kintzinger v. Millin, supra, we, as do all authorities, pointed out "in the absence of a contrary direction in the will" apportionment that is just and equitable will be ordered. This is also the tenor of all statutes governing apportionment of federal and state inheritance taxes. See annotation, 37 A. L. R.2d 13–148.

The general rule is well settled that a testator may shift the burden of taxes from the person or fund which is ordi-

narily liable under the law to some other person or fund. 28 Am. Jur., Inheritance, Estate, and Gift Taxes, section 486, page 351. In 37 A. L. R.2d 13, it is said: "A testator who desires to shift the burden of taxation from the person or fund which is liable under the law to some other person or fund is free to employ any words or combination of words that he desires. A few simple words may suffice to indicate his intent and effectuate his purpose." Many cases are annotated to sustain this statement and its logic cannot be disputed.

In the case at bar we have concluded testator's words, "Realizing that expenses and inheritance taxes will largely exhaust my personalty", were sufficient to indicate testator's intent that the receipts from the sale of the personal property were to be used for that purpose. We further note it is not illogical to make a gift or even an offer in a will which is made subject to diminution by reason of taxes, the controlling consideration being, as always in the consideration of wills, the express intent of the testator.

We conclude here the intention of the testator as expressed in the will and codicil taken as a whole was that all federal estate taxes were to be paid from the proceeds of the personal property, and that under such direction they may not be apportioned even though it would seem just and equitable to do so in this instance.

Finding no reversible error, the trial court's order in both appeals must be affirmed.—Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON, SNELL, MOORE and STUART, JJ., concur.

THORNTON, J., dissents.

HAYS, J., not sitting.