**Allan J. BERGREN and the First National Exchange Bank of Virginia, Executors of the Estate of Catherine M. Prosser, Deceased, Appellants,**

**v.**

**In the Matter of the ESTATE of Frances B. MASON, Deceased, Clarence Clausen and Frances M. Anderson, Executors, Appellees.**

**No. 53142.**

Supreme Court of Iowa.

Dec. 10, 1968.

Allan J. Bergren, Boone, for appellants.

Mahoney, Jordan & Statton, Boone, for appellees.

LARSON, Justice.

The only issue before us is whether the executors of the Frances B. Mason estate are to charge a prorata share of the federal estate tax to Catherine M. Prosser, a specific devisee, or pay the entire federal estate tax from the residue of the estate.

The trial court found the will and codicils involved were silent as to how this tax is to be paid, and held, since the federal estate tax is a tax on the gross estate collectible from all the property in the estate, that Catherine M. Prosser must pay her share of the tax. We cannot agree.

Appellee executors filed an application requesting the court to determine whether the federal estate tax due from the decedent's estate should be paid from the residue or taken pro rata from specific bequests in decedent's will. Pursuant to due notice, only the devisee Catherine M. Prosser answered and objected to an apportionment against the property specifically devised to her. No oral testimony was taken at the hearing on October 25, 1967, but by agreement a written stipulation of the relevant facts was filed. Therein it was stipu-lated that Frances B. Mason, a resident of Boone County, Iowa, died August 18, 1966, that she never married, that her will and two codicils were admitted to probate on August 24, 1966, and that the will in substance provided: first, for the payment of all just debts and funeral expenses; second, for specific bequests to four individuals of $1,000 each and $7,000 to specified institutions, and a devise of real estate in Boone County and household goods to Catherine M. Prosser; third, for the devise of the residue to certain named individuals in equal shares. It was further stipulated that the will contained no provision for payment of the federal estate tax and that the value of the estate for federal estate tax purposes is $468,867.21, that the tax as computed by the executors is $124,-582.75, and that the value of the property devised to appellants is $60,100, or 12.81 percent of the taxable estate. A copy of the will as executed, as well as the two subsequently-executed codicils, were incorporated in the stipulation. The first codicil merely added specific bequests to certain parties in the sum of $1,000 each, and the second provided for two executors instead of one.

On October 31, 1967, the court entered its order stating: "The will and codicil are silent as to how the death taxes are to be paid. The Federal Estate Tax is just what is says it is, a tax on the gross estate. Therefore, unless directed otherwise the tax must be paid from the gross estate. IT IS SO ORDERED."

Subsequent thereto both parties joined in an application to enlarge the ruling to specifically answer the question as to whether the executors are to charge a prorata share of the federal estate tax to Catherine M. Prosser or pay the entire tax from the residue of this estate. In a supplemental ruling the court clarified its decision by stating: "* * * it is a tax to be collected against all of the property in the estate no matter to whom it is devised. Mrs. Prosser will have to pay her share of the estate

tax." Thereafter due notice of appeal was given, Mrs. Prosser died, and her executors were substituted as appellants herein.

I. Prior to the 60th session of the General Assembly, which enacted chapter 326 generally known as the Probate Code, this court for a long period recognized and followed the common law rule that such tax was to be paid from the residue of an estate unless it was insufficient. In September 1962 we recognized the doctrine of equitable contribution as applicable in certain situations to provide for proration of this tax. Kintzinger v. Millin, 254 Iowa 173, 190, 117 N.W.2d 68, 78. Also see In re Estate of Artz, 254 Iowa 1064, 1075, 120 N.W.2d 418, 425.

In Kintzinger, this court held the donee of a gift inter vivos of corporate common stock should pay such portion of the federal estate tax on donor's estate as the value of such stock, for estate tax purposes, bears to the sum of the net estate, for such purposes, and the exemption allowed in computing that net estate, determined under section 935(c), Title 26, United States Code Annotated. We also held therein that where Congress has included in the estate taxable for federal estate taxes, not only the probate assets but also an inter vivos gift which testator did not own when he died, it is just and equitable, *in the absence of a contrary direction in the will*, to require the donee of the gift to reimburse the executor to the extent of the estate tax generated by it.

Although this doctrine was recognized in In re Estate of Artz, supra, and in In re Estate of Tedford, 258 Iowa 890, 140 N.W.2d 908, cited by counsel, in each of those cases the decision turned upon the express or implied intention of the testator. In neither case was it necessary to determine what the situation would have been if the will had been silent as to who should pay the federal estate tax. It is true, in Tedford, which was decided subsequent to the enactment of the Probate Code, we

said at page 893 of 258 Iowa, at page 911 of 140 N.W.2d "Succession taxes, such as our inheritance tax, must ultimately be paid by the beneficiary under the will unless the provisions and language used in the will, considered as a whole, direct otherwise", and there is language in some cases to the effect that the Iowa inheritance tax and the federal estate tax are both succession taxes which should be abated in the same manner. However, we have not dealt directly with the question presented here since sections 633.436 and 633.449 as amended were enacted by the Iowa legislature in 1963.

Section 633.436, the general order for abatement, provides in part as follows: "Except as provided in section 633.211 (not involved here), shares of the distributees shall abate, for the payment of debts and charges, federal and state estate taxes, legacies, the shares of children born or adopted after the making of a will, or the share of the surviving spouse who elects to take against the will, without any preference or priority as between real and personal property, in the following order: 1. Property not disposed of by the will; 2. Property devised to the residuary devisee, except property devised to a surviving spouse who takes under the will; 3. Property disposed of by the will, but not specifically devised and not devised to the residuary devisee, except property devised to surviving spouse who takes under the will; 4. Property specifically devised, except property devised to a surviving spouse who takes under the will; * * *."

It would seem obvious that thereafter, in the absence of a contrary intention sufficiently evident in the will, the residue of the estate is to be used before specifically—devised property for the payment of federal and state estate taxes. The language is clear and unambiguous and admits of no exceptions as to property devised under the will. As to gifts inter vivos, the meaning is not so clear, although it may be argued that the mention of federal estate taxes

would include all taxes on transfers of beneficial interests included under section 935(c), Title 26, United States Code Annotated.

Any doubt as to the intent of the legislature in enacting this provision of the Probate Code may fairly be resolved by a reading of an article entitled Decedents' Estates: Succession and Administration, by Shirley A. Webster, in Vol. 49 of Iowa Law Review 638, at pages 672 to 674. Mr. Webster served as chairman of the Special Committee on Probate Law of the Iowa State Bar Association, which drafted what is generally known as the Iowa Probate Law. Under the sub-title of Apportionment of Federal Estate Taxes, Mr. Webster wrote: "The majority of the committee agreed to recommend the draft in which federal estate taxes would be paid from the residue, and this draft was adopted by the legislature."

Section 449 of the original Act, commonly referred to as the Iowa Probate Code, provided that "All federal and state estate taxes (as distinguished from state inheritance taxes) owing by the estate of the decedent shall be paid from the property of the estate, and, in testate matters, from the residue of the estate, unless the will of the decedent, or other trust instrument, provides expressly to the contrary."

As to section 449 of the Act, Mr. Webster wrote that pursuant to further discussion of the subject by those "both in favor and against apportionment of federal estate taxes", the committee considered this issue. He then stated: "Since the gross estate of the decedent, for federal estate tax purposes, includes not only all of the real and personal property owned by the decedent at the time of his death but also includes property held in joint tenancy and in co-ownership, powers of appointment, transfers made in contemplation of death, transfers in which the decedent retained a beneficial interest during his lifetime, life insurance, and other interests as defined in the Internal Revenue Code, the principal of equal treatment under the law would seem to dictate that every person receiving any of such property should pay a proportionate share of the federal estate tax. Yet, it would seem that a rule providing for apportionment of federal estate tax would simply open the door to litigation in poorly planned estates. * * *"

True, any rule of law in its application under a given set of circumstances results in a hardship. Recognizing this, Mr. Webster concluded: "With the legal profession more cognizant than ever of the impact of federal estate taxes, and the public more and more conscious of tax problems in the administration of estates, it would appear that in the future there will be fewer persons who will leave their estates in a situation creating hardship as to payment of federal estate taxes. It seems that the trend in our society today is toward more familiarity with the impact of federal estate taxes and the necessity of proper provisions for the payment of these taxes. With this trend, and particularly in light of all of the practical problems involved, the majority of the committee suggested the rule against apportionment of federal estate taxes."

From this article it is evident that the committee, and later the legislature, were fully aware of our former decisions on this matter, including Kintzinger, but felt a certain fixed rule as to abatement of all federal estate taxes should be adopted in this jurisdiction and decided against apportionment. We must accept that direction of the legislature.

II. After the original enactment of the Probate Code, a question arose as to the meaning of the words, "and, in testate matters, from the residue of the estate" in section 449, and there were some who believed those words were words of limitation exempting such property conveyed by gift inter vivos, etc., which in effect recognized the doctrine of equitable contribution

in the event the property was not owned by the decedent at the time of death. Although we find no explanation for the amendment of this section by the 61st General Assembly, we are inclined to agree with appellants' contention that it was done to avoid any possibility of a conflict between sections 633.436 and 633.449 which clearly provided this tax was to be taken from residue.

In any event, section 633.449 as amended now provides: "All federal and state estate taxes (as distinguished from state inheritance taxes) *owing by the estate* of a decedent shall be paid from the property of the estate, unless the will of the decedent, or other trust instrument, provides expressly to the contrary." (Emphasis supplied.)

In 1966 this court in In re Estate of Tedford, supra, 258 Iowa 890, 140 N.W.2d 908, was faced with the problem of whether the testator by the terms of his will intended to have the executor take both the federal and state taxes, and the inheritance taxes on the bequests, out of the property of the residuary devisee as provided in section 633.436 or pay the succession taxes in the first instance and then take them from the respective shares of the devisees. We specifically took note of the provisions in section 449 of the Act when we held: " * * * she did intend to direct inheritance taxes, like other estate taxes, to be paid out of the residuary estate."

We conclude the 61st General Assembly amendment to section 449 removes any doubt as to whether the federal estate tax, in the absence of a direction of the will to the contrary, must be paid from the residue as the first source available. It is not to be apportioned.

There being no direction to the contrary in the will before us, the federal estate tax here must be paid from the residue.

Reversed.

All Justices concur.