# In the Iowa Supreme Court

No. 25–1084

Submitted February 18, 2026—Filed May 1, 2026

In the matter of the **Estate of Herman Carl Stille,** deceased.

**Mayo Clinic–Rochester,**

Appellant,

vs.

**Floyd County Medical Center,**

Appellee.

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, judge.

A contingent beneficiary appeals the district court judgment upholding a testator's charitable bequest to his local hospital. **Affirmed.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Mansfield, J., took no part in the consideration or decision of the case.

Eric L. Maassen (argued) and Harper F. Brown of Foley & Lardner LLP, Milwaukee, Wisconsin, and Max E. Kirk of Ball Kirk & Holm, P.C., Waterloo, for appellant.

Jennifer Lindberg (argued), Stephanie A. Koltookian, and Cassandra Alesch of Brown, Winick, Graves, Gross and Baskerville, P.L.C., Des Moines, for appellee.

**Waterman, Justice.**

In this appeal, we must decide whether a contingent beneficiary who cannot take under the will due to the nonoccurrence of a condition nevertheless has standing to challenge a conditional gift to another charity. Applying our longstanding precedent, we answer no to that question.

Herman Stille's will bequeathed over $10 million to his local hospital, the Floyd County Medical Center (FCMC), for the purpose of establishing an oncology center to serve local residents. His will also contained a condition that *if* FCMC merged with a corporate hospital group, then the gift would go to the Mayo Clinic (Mayo) for Alzheimer's research. FCMC has remained independent and stands ready to establish an oncology center that would satisfy five out of six specifications in the will. But there was a problem Stille did not foresee: it is impossible for FCMC to provide radiation treatment (one of the specifications in the will). Mayo sued seeking a ruling that the gift to FCMC failed. FCMC challenged Mayo's standing to contest the gift because it is undisputed that FCMC remains independent. The district court, after a bench trial, rejected Mayo's challenge on the merits. Mayo appealed, and we retained the case.

On our de novo review, for the reasons explained below, we hold that Mayo lacks standing to contest the bequest to FCMC. On that basis, we affirm the judgment in favor of FCMC.

## I. Background Facts and Proceedings.

In early September of 2020, Stille died at his home in Nashua, Iowa. He was ninety-four. He had been a cattle farmer and factory worker before his retirement. For over ten years he had received medical care at FCMC in Charles City. During his lifetime, Stille had been the largest donor to FCMC's charitable foundation. Stille had also received medical care at Mayo in Rochester,

Minnesota, and he had made financial contributions to Mayo's charitable foundation. His most recent gift to Mayo occurred in January 2017, but because he was dissatisfied with the care that he received there, he stopped donating to Mayo and his subsequent gifts during his lifetime went to FCMC alone, including a $20,000 donation to FCMC's foundation in December 2017 after he executed his final will in August of that year.

Stille had never married, and he had no children, living siblings, or other identified heirs. He left behind an estate valued at about $10.9 million, primarily in farmland. Stille's will made several small charitable bequests. Then, in the fifth paragraph, it disposed of the remainder of his property, stating:

> FIFTH: I give, devise, and bequeath to the Floyd County Memorial Hospital, Charles City, Iowa, for the purpose of establishing a cancer center to serve local area residents if the funds available make such establishment possible. The treatment center must have an oncologist on staff, and must be adequate to include office space for oncologists, consultation rooms for patients, separate areas for administering radiation, chemotherapy and other cancer treatments, as well as a family gathering area. *This devise is contingent on the Floyd County Memorial Hospital being maintained as an independent hospital. If the Floyd County Memorial Hospital loses its independent status and becomes part of a major healthcare corporation, I give, devise, and bequeath all the rest, residue, and remainder of my property to Mayo Foundation*, a Minnesota charitable corporation, Rochester, Minnesota, to be used for Alzheimer's disease research.

(Emphasis added.) This paragraph quickly became the subject of litigation. FCMC, expecting to receive approximately $10 million, began drawing up plans for a cancer center to meet Stille's directives. Soon, though, the hospital's administrators realized that they would not be able to provide radiation treatment at the center.

Radiation treatments require a special device called a linear accelerator. Not only are these devices costly, but they are also heavily regulated. To get a

license to operate a linear accelerator, a hospital must apply to the Iowa Department of Health and Human Services (HHS) for a certificate of need (CON). Generally, HHS will not issue a CON if there are already radiation-therapy-equipped facilities within a certain radius of the requesting facility. Here, there were several hospitals near FCMC that provided radiation treatment. Adding to the impracticability was the fact that linear accelerators are expensive to operate and maintain, meaning that FCMC, which lacked the patient base necessary to afford the device's upkeep, was priced out of the market.

Upon learning that FCMC could not provide radiation treatment, Mayo petitioned to receive the bequest. The parties conducted discovery. FCMC moved for summary judgment on the grounds that "Mayo is not entitled to any distribution from the Estate." FCMC's motion contended that "[u]nder the plain terms of the Will, Mayo *only* receives the residue of Mr. Stille's Estate *if* FCMC 'loses its independent status and becomes part of a major healthcare corporation.' " FCMC relied on undisputed facts that it remained an independent hospital and "has no intention of losing its independent status and joining a large healthcare corporation." FCMC thus contended that "[t]he unambiguous language of the Will, applied to the undisputed facts, leaves Mayo without any right to take FCMC's place as remainder beneficiary." FCMC specifically argued that for that reason, "Mayo lacks standing to maintain its challenge against FCMC"—"regardless of FCMC's ability to build the cancer center described in the Will." Mayo resisted, arguing,

> The Will is ambiguous as to the conditions under which Mayo Clinic takes the estate. Therefore, the Court can and should consider the highly probative contemporaneous evidence of Mr. Stille's intent. That evidence overwhelmingly shows that Mr. Stille intended that the estate go to Mayo Clinic if, as is the case, FCMC could not establish the cancer center he specified in his Will.

The district court denied FCMC's motion for summary judgment, concluding that the "will is . . . ambiguous and the court needs to consider extrinsic evidence to determine [Stille]'s specific intentions." The case proceeded to a nonjury trial.

At the three-day bench trial, both FCMC and Mayo presented evidence regarding Stille's donative intent. Both pointed to Stille's history of charitable giving to their respective institutions. Although Stille had ceased giving to Mayo before he executed his final will, he continued giving to FCMC in his final years of life. FCMC acknowledged that due to circumstances beyond its control, it could not provide radiation therapy. But FCMC produced evidence to show it would meet all the other conditions of the gift.

Michael Kennedy, the attorney who drafted the disputed will, testified about his time representing Stille. He noted that Stille had come to him with an existing will that he wanted to modify. That original document was executed in 2011 and provided in relevant part:

> I hereby devise and bequeath all of the rest, residue and remainder of my property to Floyd County Memorial Hospital, Charles City, Iowa, for the purpose of establishing a cancer treatment center to serve local area residents if the funds available make such establishment possible. This treatment center must have an oncologist on staff and must be adequate to include office space for oncologists, consultation rooms for patients, separate areas for administering radiation, chemotherapy and other cancer treatments, as well as a family gathering area. If establishment of this cancer treatment center is not possible, I hereby devise and bequeath all the rest, residue and remainder of my property to Mayo Foundation, a Minnesota charitable corporation, Rochester, Minnesota, to be used for Alzheimer's disease research.

That prior will did not require FCMC to remain independent to receive the request, nor did it condition the backup gift to Mayo on FCMC's loss of independence. Stille wanted those conditions to be included in his new will.

Kennedy testified that Stille visited his office in August of 2017, intending to change certain aspects of his will, which he had crossed off with a red pen. Stille had not crossed out any portion of the above-quoted paragraph, and Kennedy testified:

> [T]he intention was to take this Clause Four from the Lawler document [(the prior will)] . . . and put it into the document that we were preparing that day. And if there's any slight terminology in there, it is a transcription error or something, but the intention was to keep the same exact thought, word and direction from that will and into the new one.

But Stille then instructed Kennedy to make a substantive change to the residuary clause: to add the condition that FCMC remain independent. Kennedy's notes, taken contemporaneously at his meeting with Stille, stated:

> His primary charitable target is the Floyd Co[unty] [H]ospital. He has *two* conditions[:]
>
> (1) The hospital must remain *independent.* It cannot become a part of one of the corporate hospital giants.
>
> (2) He wants the money used to establish an oncology center.
>
> *If* these two conditions are not met this money goes to the Mayo Foundation.

Kennedy further testified:

> [T]he entire intention [that] day was to get this will done to establish the things that Herman Stille wanted; and he wanted, one, that money to go to the Floyd County Hospital with the condition that they had to establish a cancer treatment center with these -- I call them bells and whistles, those other conditions, and -- and that was condition number one, and it had to maintain its independent status. If either one was not satisfied, the money went north.

When asked to clarify what he meant by "north," Kennedy said, "To Rochester, to Mayo Clinic. Or Mayo Foundation." When asked, "[I]s there any doubt in your mind as you sit here today, about what Mr. Stille wanted if FCMC could not establish the cancer center?" Kennedy stated, "No question." Mayo's attorney

then asked, "And what was that intent?" Kennedy replied, "It had to go to the Mayo Foundation." Stille's sister had died from Alzheimer's complications, and he feared he might someday face the same disease.

The evidence further showed that on December 29, 2017, Stille met with FCMC's then-CEO, Rodney Nordeng. At that meeting, Stille donated $20,000 to FCMC and told Nordeng, "The medical center is in my will, but if you become part of Mercy [(a hospital chain)], it goes to Mayo Clinic." They did not discuss radiation treatment. Stille's focus was on FCMC's continued independence. Kennedy and Stille were unaware that radiation treatment at FCMC was not possible. Stille never discussed his proposed cancer treatment center with his doctor. Kennedy's notes and testimony made clear that loss of independence would be a dealbreaker for FCMC. Kennedy testified he had "no idea" whether Stille would have withdrawn his gift to FCMC had he known it could not provide radiation treatment there but could meet all the other conditions. Kennedy specifically testified that Stille never told him that his bequest to FCMC could be made only if it provided radiation treatment at the cancer center. More cancer patients are treated with chemotherapy than with radiation. FCMC proposed to offer transportation to its cancer patients for radiation at another facility.

The district court received posttrial briefs and subsequently entered a thorough sixteen-page ruling. The ruling did not address Mayo's standing but rather resolved on the merits Mayo's challenge to the gift to FCMC. The court observed that Mayo "provided no evidence that FCMC cannot build a cancer center or finance it with [Stille's] funds." The district court found that FCMC satisfied the two main conditions in Stille's will: (1) FCMC could establish a cancer treatment center funded by the bequest and (2) FCMC remained independent. As for what Kennedy called the "bells and whistles," the court

found that FCMC's planned cancer treatment center met five out of the six specifications: (1) an oncologist on staff, (2) office space for the oncologist, (3) consultation rooms for patients, (4) separate areas for chemotherapy and other cancer treatments, and (5) a family gathering area. The court found it was impossible for FCMC to meet just one of the six requirements—radiation treatment on-site.

The district court, relying on *Zajec v. Beaver* (*In re Estate of Beaver*), 206 N.W.2d 692, 696 (Iowa 1973) (en banc), determined that the bequest to FCMC could be saved despite the hospital's inability to provide radiation treatment. The court reasoned:

> [Stille]'s last charitable gift before his death was to FCMC. He had stopped giving gifts to Mayo and appeared focused on helping the Charles City hospital. He wanted it to be the beneficiary of his kindness. He was clearly more focused on the independent status of the hospital than the intricacies of how a cancer center would be operated and what services would be available. This court concludes that if [Stille] had known that FCMC could not purchase a linear accelerator, he would not have required that space to be available in the cancer center for radiation treatment. He would have excluded that provision and allowed FCMC to construct the cancer center without the availability of radiation therapy. Therefore, because of the impossibility of the radiation space requirement, this court concludes the inability of FCMC to provide radiation does not destroy [Stille]'s bequest.

The district court summarized its findings and ruled as follows:

> 1. Herman Stille left the residuary of his estate to FCMC to build a cancer center so long as it remained an independent hospital.
>
> 2. FCMC is an independent hospital.
>
> 3. The funds in the estate are sufficient to allow FCMC to build a cancer center.
>
> 4. FCMC will be building a cancer center with the gifted funds.

5. FCMC cannot provide radiation therapy. [Stille] would not have withdrawn his bequest if he had known it was legally impossible for FCMC to do so.

6. FCMC will have an oncologist on "staff" via joint cooperation with other medical facilities or subcontracting.

7. The bequest of the residual assets of the estate shall be payable to FCMC to build and operate a cancer center.

8. Costs of this action are assessed to Mayo.

Mayo appealed, arguing that the district court erred when it applied *Estate of Beaver* to permit FCMC to take under Stille's will. FCMC defends the district court's application of that precedent. FCMC on appeal also reprises its argument that Mayo lacks standing to challenge the bequest to FCMC because FCMC maintained its independence, defeating the precondition for any gift to Mayo. We retained the appeal.

**II. Standard of Review.**

This probate case was tried in equity, and the parties agree that our standard of review is de novo. Iowa R. App. P. 6.907 ("In equity cases review is de novo."); *In re Est. of Myers*, 825 N.W.2d 1, 3 (Iowa 2012). "We give weight to the probate court's factual findings, particularly on the credibility of witnesses, but are not bound by them." *In re Est. of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013). "We review the probate court's interpretation of statutory provisions for corrections of errors at law." *Id.*

"We review questions of standing for correction of errors at law." *Homan v. Branstad*, 864 N.W.2d 321, 327 (Iowa 2015).

**III. Analysis.**

We first construe the will to determine Mayo's standing to contest the gift to FCMC. We conclude that Mayo takes under the will only if FCMC loses its independence. On our de novo review of the record, we agree with the district

court's factual findings that FCMC remained independent. Mayo does not contest that factual finding. We next apply our precedent to determine that this undisputed finding is fatal to Mayo's standing to challenge the gift to FCMC. We affirm the district court judgment on that alternative ground urged by FCMC.

**A. Governing Interpretive Principles.** "In Iowa, the cardinal rule of will construction is that 'the intent of the testator is the polestar and must prevail.'" *Roll v. Newhall*, 888 N.W.2d 422, 426 (Iowa 2016) (quoting *Lawrence J. Rogers Tr. v. Rogers* (*In re Est. of Rogers*), 473 N.W.2d 36, 39 (Iowa 1991)). The testator's intent "must be ascertained from the will, itself, and from nothing else, if its language is plain and unambiguous." *Palmer v. Evans*, 124 N.W.2d 856, 860 (Iowa 1963) (quoting *Artz v. Logan* (*In re Est. of Artz*), 120 N.W.2d 418, 422 (Iowa 1963)). "[E]xtrinsic evidence may not be presented in attempts to prove the testator's intent was not the same as that expressed by the language of the will or to vary, contradict, or add to the terms of the will." *In re Est. of Eickholt*, 365 N.W.2d 44, 46 (Iowa Ct. App. 1985). "We will not, from oral testimony, make a will the testator perhaps intended to, but in fact did not, make." *Est. of Rogers*, 473 N.W.2d at 40. In the end, where the testator's intent as expressed in the will is clear and unambiguous, "there is no need for judicial construction, or extrinsic evidence, and all other rules of testamentary interpretation are inapplicable and must yield." *Palmer*, 124 N.W.2d at 860 (quoting *Est. of Artz*, 120 N.W.2d at 422); *see also Kalouse v. Burda* (*In re Est. of Kalouse*), 282 N.W.2d 98, 104 (Iowa 1979) (en banc) (disallowing use of extrinsic evidence to construe unambiguous terms of a will).

**B. Mayo's Lack of Standing.** Mayo argues that it has standing as a contingent beneficiary if Stille's gift to FCMC fails. FCMC argues that Mayo cannot take under the will because Stille's bequest to Mayo was expressly

contingent on FCMC's loss of independence, which never occurred. We agree with FCMC.

We see no ambiguity in the terms of Stille's will that expressly conditioned the gift to Mayo on FCMC's loss of independence. The operative language states:

> This devise is contingent on the Floyd County Memorial Hospital being maintained as an independent hospital. If the Floyd County Memorial Hospital loses its independent status and becomes part of a major healthcare corporation, I give, devise, and bequeath all the rest, residue, and remainder of my property to Mayo Foundation, a Minnesota charitable corporation, Rochester, Minnesota, to be used for Alzheimer's disease research.

We hold that Mayo takes nothing under the will because FCMC remained an independent hospital.

That determination in turn means Mayo lacks standing to contest Stille's bequest to FCMC. *See Pearson v. Pearson* (*In re Est. of Pearson*), 319 N.W.2d 248, 249–50 (Iowa 1982) (holding that a mere contingent interest that may never vest is insufficient for standing to contest a will); *Livingston v. Lennox Coll.*, 185 N.W. 122, 125 (Iowa 1921); *see also Mitchellville Cmty. Ctr. v. Vos* (*In re Clement Tr.*), 679 N.W.2d 31, 36–39 (Iowa 2004) (generally requiring a right to receive a benefit for standing to challenge operation of a charitable trust); *Gleason v. Korde*, No. 12–2025, 2014 WL 4628912, at *2 (Iowa Ct. App. Sep. 17, 2014) (holding beneficiary lost standing after he conveyed his interest in the inherited property); *In re Trusteeship Under the Will of Frye*, No. 08–0775, 2009 WL 250355, at *3–4 (Iowa Ct. App. Feb. 4, 2009) (remainder beneficiary under residual trust lacked standing to contest amount trustee charged for rent).[1]

For example, in *Livingston v. Lenox College*, the testator bequeathed funds to Lenox College for the purpose of establishing an experimental station in

---

[1]The attorney general has standing to enforce the terms of charitable trusts under Iowa Code section 633A.5108 (2020).

farming and domestic science, conditioned on the college raising $25,000. 185 N.W. at 123. The will provided that if the condition were "not accepted," the estate would pass to the testator's legal heirs. *Id.* at 122. The college raised the required sum, satisfying the condition precedent. *Id.* at 123. The heirs then challenged the college's use of the funds, arguing it had not established the intended facility and had spent the funds for other purposes. *Id.* We held that because the condition precedent was satisfied, the heirs' "only possible interest in the . . . estate was eliminated" and they had no "interest in the subject-matter as [would] enable them to maintain [the] action." *Id.* at 125. We acknowledged that satisfaction of the condition "did not, of course, relieve the college of its legal and moral obligation to apply the estate so received to its intended purpose," but the college was "not answerable for such failure to the appellants." *Id.* Under *Livingston,* because FCMC remains independent, Mayo cannot take under Stille's will, and Mayo therefore lacks standing to challenge FCMC's compliance with the cancer center specifications or its proposed use of the funds. We affirm the district court judgment based on Mayo's lack of standing. We do not reach the remaining issues raised in this appeal.

**IV. Conclusion.**

For the foregoing reasons, we affirm the district court's judgment.

**Affirmed.**

All justices concur except Mansfield, J., who takes no part.