NORVIN L. NOLTE et al., appellants, v. ELVA S. NOLTE, individually and as executrix of estate of Edward L. Nolte, deceased, appellee.

No. 48854.

(Reported in 76 N.W.2d 881)

MAY 9, 1956.

Emmert, James, Lindgren & Eller, of Des Moines, for appellants.

Edwin S. Thayer, of Des Moines, for appellee.

THOMPSON, J.—Edward L. Nolte died testate on February 1, 1954. He left a will, executed on November 24, 1950, the terms of which give rise to the present controversy. The plaintiffs are sons of Edward L. Nolte; the defendant, Elva S. Nolte, is his surviving spouse. The litigation is of that unfortunate class which so often arises between children of a former marriage and a later-married wife. Elva S. Nolte is a defendant herein both in her individual capacity and as executrix of the estate. Since the controversy is in substance between the plaintiffs and Elva S. Nolte individually she will be referred to as the defendant.

Item III of the will bequeathed certain personal property of inconsiderable value to the plaintiff Norvin L. Nolte. Item IV gave other personalty, likewise not of large value, to the plaintiff Clifford L. Nolte. Items II, V, VI, and VII are the important parts of the will from which we must make our determination of the issues. They are set out in full herewith:

"ITEM II. I direct that all my legally enforceable debts, taxes and funeral expenses be fully paid as soon after my death as can properly be done. * * *

"ITEM V. I give, devise and bequeath to my beloved wife, Elva S. Nolte, all the residue, excepting the specific bequests appearing in ITEM III and ITEM IV above, of my personal property of every kind and character wherever it may be located, including money, accounts receivable from my business, subject to the terms of ITEM VII, car and household goods.

"The gifts, devises and bequests to my beloved wife, Elva S. Nolte, and provisions herein made for her are in lieu of dower or distributive or elective shares. In the event Elva S. Nolte shall predecease me, or in the event she shall elect to refuse to take under my Will, then in either event the gifts, devises and bequests herein made to her or for her shall lapse and the provisions of this, my Last Will and Testament, shall nevertheless be carried out insofar as is possible.

"ITEM VI. I give, devise and bequeath to Elva S. Nolte, Norvin L. Nolte and Clifford L. Nolte each a one-third (1/3) interest in a certain duplex dwelling located at 3701 Franklin Avenue, in the City of Des Moines, Polk County, Iowa. In the event that any of them shall predecease me, their share shall go to their children, if any, and if there are no children, the property shall be divided equally among the survivors.

"ITEM VII. I give, devise and bequeath to my wife, Elva S. Nolte, so long as she does not remarry, a life estate in our home at 2313 Beaver Avenue, in the City of Des Moines, Polk County, Iowa, with remainder over after her death or remarriage to my sons, Norvin L. Nolte and Clifford L. Nolte, to be divided equally. In the event of one of my sons becoming deceased, his children shall take his share. If there are no children, the other son shall take the whole.

"At this time the home is being purchased under contract and there is a balance of Twelve Thousand Dollars ($12,000.00) owing. I have been carrying two (2) policies with the Connecticut Mutual Life Insurance Company in the total amount of Seven Thousand Dollars ($7,000.00) in which my beloved wife and sons have been named beneficiaries. However, I have

changed the beneficiaries and have now made them payable to my estate.

"I hereby specifically direct that the money from these policies, unless it has to be used for payment of my debts in ITEM II above, be paid on the contract and the balance over, if any, shall be given as in V above. If the money from the policies is not sufficient to pay the balance on the contract, it is directed that so much of the money as necessary be taken from ITEM V."

The only claim filed against the estate, and which is concededly valid, is upon a mortgage note payable to the Des Moines Savings & Loan Association. It was in the sum of $5257.26 as of May 23, 1954. The mortgage securing it was upon the property known as 3701 Franklin Avenue, Des Moines, referred to in Item VI of the will. It is the source of the payment of this claim and the costs of administration which is disputed here.

At the time the will was executed the testator owned real estate described in Item VII of the will as 2313 Beaver Avenue, Des Moines, which he was purchasing through a contract. There was an unpaid balance on the contract, to which reference was made in the last paragraph of Item VII. But before his death he had sold this property and had in the course of the transaction fully paid the balance on the contract. He had apparently between the time of executing the will and his death acquired a parcel of realty described as Lot 28, Hazelwood (except that part deeded for street purposes to the City of Des Moines), as shown by the official plat. This tract was not disposed of by the will and so became intestate or descended property.

The trial court found the proceeds of the two life policies described in Item VII, paid to the executrix in the sum of $7035.57, to be exempt from payment of debts and charges, and to be the individual property of Elva S. Nolte under the terms of Item V. It found that the descended real estate should first be sold and the proceeds applied upon the costs and then upon payment of the claim filed. The order of abatement of bequests and devises in the will thereafter was held to be this: second, the two-thirds interest of the plaintiffs in the specifically devised real estate, described as 3701 Franklin Avenue; third, the one-third interest of Elva S. Nolte in the same realty; fourth, the

general bequest of nonexempt personal property to Elva S. Nolte provided in Item V; and last, the specific bequests to the plaintiffs given in Items III and IV, these to abate equally. Plaintiffs appeal from the judgment holding the proceeds of the insurance policies to be exempt and that they were not subject to debts and charges before other property of the estate, and from the order of abatement of the bequests and legacies as fixed by the court. Defendant appeals from some parts of the order of abatement.

I. Without doubt the most important controversy concerns the holding that the life insurance proceeds are exempt and are not subject to payment of charges and debts before other property of the estate must be resorted to. Section 511.37, Code of Iowa 1954, so far as material here, provides:

"A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors."

To the same effect is section 635.8, Code of Iowa 1954. It is the defendant's contention, with which the trial court agreed, that by virtue of these sections the insurance proceeds are exempt, and by Item V of the will the entire sum thereof was given to her, as a part of the residuum of the personal property of the estate. We are unable to agree with the able trial court in its solution of this problem.

This court has held that a testator may dispose of the proceeds of life insurance by will. Miller v. Miller, 200 Iowa 1070, 1074, 1075, 205 N.W. 870, 873, 43 A. L. R. 567; In re Estate of Clemens, 226 Iowa 31, 34, 282 N.W. 730, 732. Proceeding one step further, we held that the testator might likewise make the proceeds of life policies payable to his estate, subject to his debts. In re Estate of Caldwell, 204 Iowa 606, 610, 215 N.W. 615, 617. In other words, the maker of a will may eliminate the exemption that would otherwise obtain in favor of his widow and heirs, and make the proceeds of the policies subject to all or any specified debts or charges of his estate.

But if he desires so to do, he must make his intention clear. An intent to waive the benefit of exemption laws must be clearly expressed. In re Will of Grilk, 210 Iowa 587, 589, 231

N.W. 327, 328; In re Estate of Caldwell, supra, pages 608 and 609 of 204 Iowa, page 617 of 215 N.W.; 35 C. J. S., Exemptions, section 105, page 135. Nor will mere formal words in a will, such as "I will and direct that all my just debts be first paid from my estate", found in the will under analysis in In re Will of Grilk, supra, be sufficient to show a clear intent to waive the exemption and subject the otherwise exempt property to payment of debts. See also 69 C. J., Wills, section 2506; In re Estate of Hazeldine, 225 Iowa 369, 380, 280 N.W. 568, 574; In re Estate of Galloway, 222 Iowa 159, 160, 161, 269 N.W. 7, 8.

██ The question that must be resolved here is whether Edward L. Nolte did, in sufficiently clear and explicit terms, indicate his intent that the proceeds of the life insurance policies payable to his estate should be subject to payment of his debts. In all matters pertaining to the construction and meaning of wills the treasure sought by the courts is the intent of the testator. Wright v. Copeland, 241 Iowa 447, 452, 41 N.W.2d 102, 105; In re Estate of Ritter, 239 Iowa 788, 797, 32 N.W.2d 666, 671, 2 A. L. R.2d 1301; DeKoster v. Roggen, 229 Iowa 938, 942, 295 N.W. 440, 442; In re Estate of Flannery, 221 Iowa 265, 271, 264 N.W. 68, 71. These rules of law being kept in mind, the question to be decided here becomes one of construction. Does the language used, particularly in Item VII, amount to a clear expression of intent to make the insurance proceeds liable for debts of the decedent? The question is not free from difficulty; but we think a fair construction leads to an affirmative answer.

[5, 6] It will be noted that the testator went to the trouble of reciting the former beneficiaries under these policies, and that he had made a change so that the proceeds were at the time of making the will payable to his estate. It is urged that this was for the sole purpose of applying such proceeds to the payment of the balance unpaid on the real-estate purchase contract. If this is so, why was the clause "unless it has to be used for payment of my debts in Item II above" inserted? The defendant points out to us that the testator is presumed to have known the law. So he is. Benz v. Paulson, 246 Iowa 1005, 1013, 70 N.W.2d 570, 574; Harvey v. Clayton, 206 Iowa 187, 197, 220 N.W. 25, 29. But the point does not aid the defendant. Edward L. Nolte,

being presumed to know the law, must be presumed to have known his life insurance policies were exempt unless he expressed his intent that they should not be. He needed to say nothing if he intended the exemption to apply, except for the now nonexistent balance then unpaid on the real-estate contract. Unless he intended that these moneys, the proceeds of the life policies, should be subject to and used for payment of debts, why was the above quoted phrase used? What purpose did it serve? The defendant says it meant nothing; that the avails did not "have to be used" for payment of the debts because they were exempt and could not be so used. The argument begs the question. It starts with the premise the proceeds were exempt, and reasons that because they were originally exempt it must be concluded they remained so.

The phrase was not a mere formal one such as was discussed and held not sufficient to show an intent to waive exemption in In re Will of Grilk, supra, and like cases. It must have been inserted in the will deliberately and for a purpose. The testator had changed the beneficiaries in the policies to make them payable to the estate. He had in mind, without doubt, the use of the proceeds to pay the remainder on the realty contract; but he qualified this by the "unless" clause above set forth. The money was to be used on the contract, unless it was needed—"had to be used"—to pay the general debts referred to in Item II. If Edward L. Nolte did not intend to make the insurance money liable for these debts, why did he refer to the possible necessity at all?

Then he proceeds, after the "unless" clause and direction that the money be paid on the contract, to provide that "the balance over, if any, shall be given as in V above." Item V is the donation of the residuum of the personalty to the defendant. What the testator said here, as we construe his language, is that the money should be used first, for the payment of debts in Item II; then, "unless it has to be used for payment of my debts" it should be applied on the contract; and any residue should go to the residuary personalty bequest defined in Item V. We may grant he could have used more definite and unqualified words to show his intent; yet the construction we have put upon them is the only possible one which takes into account and gives meaning

to all the language of Item VII. We cannot ignore the reference to the possible necessity for using the money to pay the general debts of the estate; it is there, it must have been put there for a definite purpose. Knowing the law, the testator must also have known that his life insurance proceeds could not be used to pay debts unless he made them so; and if he did not intend to make them so, the quoted phrase is entirely meaningless.

The strenuous controversy arising concerning the proper construction to be given to Item VII, particularly to the words "unless it has to be used for payment of my debts in Item II above", indicates, and we so hold, that the will is to some extent ambiguous as to its exact meaning at this point. Under such circumstances, we may resort to extrinsic evidence as an aid in our interpretation. The language of a will is not to be varied by parol proof. But where it is obscure, and more than one construction is possible, outside evidence may resolve a doubtful interpretation. Wright v. Copeland, supra, 241 Iowa 447, 452, 41 N.W.2d 102, 105, and cases cited; In re Estate of Schmitz, 231 Iowa 1178, 1182, 3 N.W.2d 512, 515, and cases cited. We have indicated above that we think the language of the will, even if there were no extrinsic evidence, would require a holding that the life insurance proceeds are to be used first for the payment of debts. But we also think this is a case where parol proof may be resorted to as an aid in determining the testator's real intent.

The evidence shows that the defendant received the proceeds of two life insurance policies payable directly to her in the total amount of slightly more than $15,000. She also received the sum of three joint-account bank deposits, totaling approximately $5750; and there was other personalty inventoried as nonexempt of the scheduled value of $2400. As against this, the listed value of the personalty bequeathed to one of the plaintiffs is about $550 and to the other $283.50. This, with the one-third interest to each plaintiff in the realty known as 3701 Franklin Avenue, in which the defendant also was given one third, is the total amount the plaintiffs will receive from the estate under the will. The defendant was given a life interest in the property being purchased by contract, with remainder to the plaintiffs; but this is gone, and the testator did not see fit to change his will to give

878

the plaintiffs what would seem to be a more equitable portion. It is true he had a right to prefer his widow if he so desired; but in the light of the considerable provision for her and the comparatively meager bequests and devises left to the plaintiffs, we think the conclusion that he meant his debts should be paid from the proceeds of the life policies described in Item VII is considerably strengthened. We conclude the trial court was in error in its holding that the life insurance proceeds were exempt and there was no intent to make them subject to debts.

■ However, the proceeds of the life insurance policies were made subject only to "my debts in Item II above." Item II referred not only to debts, but to taxes and funeral expenses. By using the language he did in Item VII the testator limited the class of charges from which the exemption was removed to "debts." This must be taken to mean debts in the usual sense of the term; there is no evidence of any indication to include charges and claims which do not come within this classification. As the defendant-appellee says, "debt" is an old acquaintance of most of us, and its meaning as applied to estates of decedents is well settled. In the absence of an expression of a contrary intent, it means "debts due by the deceased or expected to be due in his lifetime." Ver Standig v. St. Louis Union Trust Co., 344 Mo. 880, 887, 129 S.W.2d 905, 909; Volume 11, Words & Phrases, Perm. Ed., Debt, pages 264, 265, 266, and cases cited.

Costs of administration do not come within the above definition. They are charges arising after the death of the decedent. The same is true of funeral expenses. In re Cunningham's Estate, 17 N. J. Misc. 33, 3 A.2d 876, 877; Smolka v. James T. Chandler & Son, Inc., 41 Del. (2 Terry) 255, 20 A.2d 131, 133, 134 A. L. R. 629; In re Estate of Kelly, 183 Wis. 485, 198 N.W. 280, 282; Phillips v. Tribbey, 82 Ind. App. 68, 141 N.E. 262, 144 N.E. 861; In re Estate of Stiles, 126 Misc. 715, 719, 215 N. Y. S. 134, 137 ("The funeral expense and the expense of administration are in no sense debts of the testator").

It is our conclusion that the proceeds of the insurance policies must be held subject to payment only of such obligations as were legally enforceable debts of the testator at the time of his death.

II. Neither party is satisfied with the judgment of the court in determining the order of application of property of the estate to the payment of indebtedness. The usual order is this: First, unexempted personalty except specific bequests; second, realty specifically devised to pay debts; third, real estate descended; and fourth, real estate specifically devised and personalty specifically bequeathed, ratably. Apart from the proceeds of the life insurance, which we have held in Division I hereof should be first used, it is the plaintiffs' contention that the residuum of personalty bequeathed to the defendant by Item V of the will should be first applied to debts; then, there being no real estate specifically devised for such payment, the descended real estate; next the specifically devised real estate; and last, the specifically bequeathed personalty. The order actually fixed by the trial court placed the descended real estate first; then the specifically devised real estate; next the residuary personalty; and last the specifically bequeathed personalty.

The defendant contends that the descended real estate should be first in order of abatement, and the specifically devised realty next, except for her one-third interest. But she thinks the specific bequests of personalty should abate before the residuum bequeathed to her by Item V, and before her one third of the specifically devised realty. In substance, both plaintiffs' and defendant's challenges to the order of abatement fixed by the trial court raise the same legal question.

The general rule as to abatement is as contended for by the plaintiffs, with one variation hereinafter discussed. In re Estate of Ritter, supra, 239 Iowa 788, 798, 32 N.W.2d 666, 671, 2 A. L. R.2d 1301; Wilts v. Wilts, 151 Iowa 149, 154, 155, 130 N.W. 906, 908. But it may be modified or changed under varying situations. A widow who elects to take under the terms of a will instead of claiming her distributive share generally is presumed to take by purchase rather than by gift, and she is entitled to receive what she has paid for.

Section 633.2, Code of Iowa 1954, says: "Where the survivor is named as a devisee in a will, it shall be presumed, unless the intention is clear and explicit to the contrary, that such devise is in lieu of such distributive share, homestead, and exemptions."

In the instant case the will specifically provided, in Item V, that the gifts to the wife were in lieu of dower or distributive share.

Under the circumstances, the widow electing to take under the terms of the will became a purchaser for valuable consideration, and the bequest and devises to her cannot be used to pay debts until all other nonexempt property of the estate has first been applied thereupon. 57 Am. Jur., Wills, section 1459. This question was exhaustively analyzed and discussed in In re Estate of Hartman, 233 Iowa 405, 9 N.W.2d 359, and it would serve no useful purpose to set forth again the logic or authorities by which the sound conclusion therein contained was reached. We are satisfied with the holding of the Hartman case, and it governs the case at bar as to the order of abatement of the devises and bequests. The trial court properly held that the descended real estate should first be used (now after the application of the insurance proceeds). The plaintiffs' contention that the residuary bequest of personalty to the widow should be first applied falls afoul of the rule of the Hartman case. Nor does it matter, we think, that the bequest here is residuary rather than specific or merely general. The residuum of personalty left to her by the terms of the will was as much a part of the consideration passing to her for her release of her right to a distributive share as any other bequests or devises. By Item V she was given all of the personalty except the specific bequests to the plaintiffs contained in Items III and IV; and she is entitled to receive this undiminished by debts. Nohn v. Degnen, 267 N. Y. 559, 196 N.E. 578; In re Estate of Lanigan, 174 Misc. 570, 21 N. Y. S.2d 550; In re Estate of Bloomingdale, 160 Misc. 602, 290 N. Y. S. 479; Bailey v. Milligan, 256 Mass. 90, 152 N.E. 75.

It follows that plaintiffs' appeal so far as it is based upon the contention that the residuary personalty given to the defendant by Item V should be first in order of abatement is held to be lacking in merit. After the insurance proceeds, the descended real estate must be first applied to the debts and charges; then the interests of the plaintiffs in the specifically devised realty and the personalty specifically bequeathed to them, ratably; then the interest of the defendant in the specifically devised

real estate and her residuary legacy of personalty in such order as she may elect. The defendant's cross-appeal, which asserts error in the judgment of the trial court that her interest in the specifically devised real estate and the residuary personalty given to her should abate before the specific bequests and devises to the plaintiffs, is well founded.

It will be noted that the order of abatement set out above differs from the fourth category set out in Wilts v. Wilts, supra, 151 Iowa 149, 154, 155, 130 N.W. 906, 908, and In re Estate of Ritter, supra, 239 Iowa 788, 798, 32 N.W.2d 666, 671, 2 A. L. R.2d 1301. This category in the cited cases lists only "fourth, the real estate specifically devised." This we have changed above to "the interests of the plaintiffs in the specifically devised realty *and the personalty specifically bequeathed to them, ratably.*" This has the effect of placing specifically devised realty and specifically bequeathed personalty on the same basis in considering abatements.

The opinion in the Wilts case, supra, where the general order of abatement was first stated, did not consider the matter of specifically bequeathed personalty, without doubt for the reason stated at page 151 of 151 Iowa, page 906 of 130 N.W.: "The personal property proved insufficient to discharge decedent's debts * * * and the controversy is whether these should be paid from the proceeds of the land generally, or of that portion which descended to the heirs." It is apparent there was no specifically bequeathed personalty involved. In re Estate of Ritter, supra, seems to have stated the order of abatement laid down in the Wilts case without further consideration.

We think the correct rule is that ordinarily specifically devised realty and specifically bequeathed personal property should abate ratably. There is authority that the personalty should abate first; but the majority rule is that where no contrary intent of the testator is shown, "if both classes are liable for debts * * * they should contribute and abate ratably." 57 Am. Jur., Wills, section 1461, page 984.

Pomeroy's Equity Jurisprudence, Fifth Ed., section 1137, says: "Whenever it becomes necessary to resort to the class composed of the specific legacies and devises, all the legacies and

devises in that class will abate pro rata. Specific legacies and devises stand upon the same footing, are subject to the same liability, are abated together under the same circumstances, and contribute ratably for the payment of debts and charges."

Some attention must be given at this point to In re Estate of Lepley, 235 Iowa 664, 666, 17 N.W.2d 526, 527. This case, decided later than the Hartman case, supra, seems to reach a contradictory result. There, as here and in the Hartman case, the widow elected to take under the will. She was given a general and residuary bequest of " 'all of the personal property of whatsoever kind or nature of which I die seized.' " This bequest was held to be primarily subject to payment of an indebtedness arising upon a mortgage on real estate. We have examined the record and the briefs and arguments in the Lepley case, and find that the rule laid down in the Hartman case was not argued, nor was it discussed or considered either by the trial court or this court. Under these circumstances the Lepley case is not to be considered as overruling the Hartman case. We affirm the principle of the Hartman case, which we think sound and hold to be still the governing rule in Iowa.

III. It should be noted that a secured debt is placed upon the same footing as an unsecured one for the purpose of determining liabilities of an estate; nor is it contended otherwise. In re Estate of Brackey, 166 Iowa 109, 112, 113, 147 N.W. 188, 191; Wilts v. Wilts, supra, at page 155 of 151 Iowa, page 908 of 130 N.W.

It follows that the decree of the trial court must be reversed both upon the appeals of the plaintiffs and of the defendant. The cause is remanded for decree in accordance with this opinion. Costs are taxed against plaintiffs, one fourth, and against defendant, three fourths. Defendant's printing costs are certified as the sum of $312.50 for 85 pages. It is the policy of this court to hold costs of appeals to the minimum amount consistent with a proper presentation. Satisfactory printing can be had for much less than the amount charged above. Except for the fact that approximately one half of defendant's brief and argument consists of single-spaced quotations, we should not allow more than $1.50 per page. But in view of the large amount

of single spacing, we think it proper to allow defendant the sum of $2 per page as taxable printing costs. Reversed on both appeals.

LARSON, C. J., and BLISS, GARFIELD, OLIVER, PETERSON, SMITH, and WENNERSTRUM, JJ., concur.

HAYS, J., dissents from Division II.