**In the Matter of the ESTATE of Cecil A. NOE, Deceased.**

**No. 54782.**

Supreme Court of Iowa.

Feb. 25, 1972.

Mossman & Grote, by Keith Mossman, Vinton, for executors-appellants.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., Harry M. Griger, Asst. Atty. Gen., for appellee Iowa Department of Revenue.

RAWLINGS, Justice.

Action by executors of Cecil A. Noe's (decedent) estate against Iowa Department of Revenue (Department) for refund of alleged inheritance tax overpayment. Trial court held adverse to executors and they appeal. We affirm.

Decedent, a resident of Benton County, died testate November 13, 1967, survived by his wife Anna, three sons, and two daughters. His estate consisted of personalty worth $51,729.55, joint property and life insurance in the amount of $30,692.89, and real property valued at $233,275.00. Debts, charges and federal estate taxes totaled $53,047.49.

Decedent's will provides his wife receive all personalty absolutely. She is additionally granted a life estate in all real property, remainder to five children, each being devised a specific parcel. Although the will directs payment of all just debts and claims against the estate, it makes no provision as to abatement.

Executors used the personal property bequeathed decedent's wife for payment of the aforementioned estate obligations. They then filed a Final Iowa Inheritance Tax Return, showing tax due of $3,232.08, premised upon abatement of personalty devised to the wife. Department thereafter advised executors to the effect such abatement approach was improper, the correct order of abatement being as provided by The Code 1966, Section 633.436. Accordingly an additional $1,570.59 tax was assessed.

Executors paid this additional assessment, then initiated the present refund action. They have consistently contended abatement should be pursuant to The Code 1966, Section 633.437, i. e., estate obligations should be paid first out of personalty left the surviving spouse, since to abate the real property specifically devised to remaindermen children would defeat decedent's testamentary plan. Although there is some conflict in the record executors contend the Iowa inheritance tax under this approach would, as aforesaid, be $3,-232.08.

Department, by answer, again took the position abatement should be governed by §

633.436, i. e., property devised the children be first abated. Iowa inheritance tax thereunder would be $4,802.67.

In denying the refund application trial court found no extraordinary circumstances justifying application of the alternative provisions of § 633.437. From this adjudication executors appeal.

The sole issue instantly presented is whether abatement should be in accord with Code § 633.436 or § 633.437. These legislative enactments are set forth at length in the case of In re Estate of Kraft, 186 N.W.2d 628 (Iowa), and need not be here repeated.

■ I. Our review is de novo. The Code 1966, Section 633.33; In re Estate of Kraft, *supra*.

II. Abatement, in Iowa, is generally governed by § 633.436, which specifically delineates the order in which bequests stand aside in deference to estate claims. The background and intent of this statute was discussed at length in the recent case of In re Estate of Twedt, 173 N.W.2d 545, 547 (Iowa), where we said:

"The section evidences a clear intent on the part of the legislature to protect the interest of the surviving spouse. Each section dealing with property that passes under the will specifically protects the property passing to the spouse down to the very last source. Then, and then only, does the legislature make the spouse's share subject to debts and charges. (The legacies will already have been eliminated.)

"The Bar Committee Comment found at 47 I.C.A., section 633.436, page 249 reads: 'Adapted from section 184 of the Model Probate Code with codification of Iowa law that share of surviving spouse abates last in the absence of contrary testamentary intent. This section adopts the modern rule of abatement and makes explicit the order in which the share shall abate in the absence of contrary

testamentary intent. * * *.' The codification of the preference to the widow springs from such cases as In re Estate of Hartman, 233 Iowa 405, 408, 9 N.W. 2d 359, where the court held the appellee (spouse) took under the will as purchaser, hence a specific legacy to nephews and nieces must abate before a general legacy to a spouse who elects to take under the will."

■ III. In substance, § 633.437 provides for a contrary order of abatement only in that unusual case where the general scheme provided for in § 633.436 would defeat (1) provisions of the will, (2) the testamentary plan, or (3) the express or implied purpose of the devise. In re Estate of Kraft, 186 N.W.2d at 631; In re Estate of Twedt, 173 N.W.2d 545, 548.

■ IV. Executors here contend decedent clearly intended all real property ultimately pass intact to his remaindermen children and abatement under § 633.436 would, in effect, defeat that plan. In support of this claimed testamentary intent they point to the life estate granted decedent's wife, the devise of specific parcels of realty to each remainderman, and that portion of decedent's will which provides:

"ITEM III.

"* * *

"(f) In the event that any of the above named children desire to sell their interest in the above described property, I hereby direct that my other children hereinbefore named shall have the option and right to purchase said child's or children's interest in said property prior to said child or children selling said property to any other person. This option shall continue for a period of five years from and after the death of my wife. The purchase price shall be determined by an impartial appraisement, the seller choosing one appraiser, the buyer an appraiser and these two appraisers choosing a third."

For reasons hereafter stated this contention by executors is to us not persuasive.

V.

"Inceptionally it is well settled, in cases such as this, (1) testator's intent is the polestar and if expressed must control; (2) that intent must be gleaned from a consideration of, (a) *all language contained within the will*, (b) the scheme of distribution, (c) the circumstances surrounding testator at time the will was executed, (d) existing properly established facts; and (3) technical rules of construction should be resorted to only if the will is clearly ambiguous, conflicting, or testator's intent is for any reason uncertain." (Emphasis supplied). In re Estate of Miguet, 185 N.W.2d 508, 513 (Iowa).

We find decedent's will neither unusual nor ambiguous. Construed as a whole, it clearly evidences an intent on testator's part to first provide for his wife Anna in event she survived him. This intent is manifested by the bequest to her of all personalty and creation of the life estate. See In re Estate of Kraft, 186 N.W.2d 628 (Iowa). And the fact that decedent devised specific tracts of land to the remaindermen does not detract from this conclusion, being nothing more than evidence of a secondary plan or purpose.

In light of the foregoing we are persuaded executors' contention, premised on inference and an isolated provision of the will, must fail. When a will, construed as a whole, does not in sufficiently clear and explicit terms disclose a contrary intent, provisions for the widow in lieu of dower and other rights must be accorded preference. In re Estate of Artz, 254 Iowa 1064, 1071, 120 N.W.2d 418; Nolte v. Nolte, 247 Iowa 868, 875, 76 N.W.2d 881; In re Estate of Hartman, 233 Iowa 405, 409, 9 N.W.2d 359.

VI. Furthermore, even if the instant will were so ambiguous as to require construction, executors' contention must still necessarily fail. Demonstrably the adoption of executors' proposed construction would, in effect, serve to negate any bequest of personalty to the widow since estate claims exceed the value thereof. Stated otherwise, executors would have us so construe the will as to completely defeat that provision which gives all of decedent's personal property to his wife. In that regard this court has consistently viewed with favor construction of a will which gives effect to every provision contained therein. Watson v. Manley, 257 Iowa 92, 95, 130 N.W.2d 693. Also, as stated in the case of In re Estate of Miguet, 185 N.W. 2d at 513:

"* * * if a testamentary provision is reasonably susceptible to two constructions, one making it void or inoperative, the other rendering it valid and effective, the latter must be accepted, the former rejected." Accord, Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297.

Briefly stated, the application of executors' theory would obviously destroy the absolute bequest of personalty to decedent's widow. In other words it would unquestionably defeat testator's testamentary plan. We do not elect to adopt that approach.

Affirmed.

All Justices concur, except BECKER, J., who dissents, and HARRIS, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

I. Our probate abatement sections 633.436 and 633.437, Code, 1966, have already caused difficult problems of interpretation. In Re Estate of Kraft, 186 N. W.2d 628 (Iowa 1971); In Re Estate of Twedt, 173 N.W.2d 545 (Iowa 1970). There is a difference in emphasis in the two opinions which needs additional attention.

Both cases recognize section 633.436 sets up a clear abatement formula and one of the formula's chief purposes is to protect the surviving spouse. Both cases also indicate section 633.437 provides an exception to the abatement formula under certain circumstances. Where the two cases differ is in the sources examined to consider the circumstances which dictate a different manner of abatement. In both In Re Estate of Kraft, supra, and the case now being decided, the court looks to the will of the testator and no further. In the Twedt case, supra, the trial court and this court looked not only to the will but more importantly to the "provisions of the testamentary plan and the express or implied purpose of the devise."

The above distinction is important, particularly in this case. In Kraft the court found enough in the will to satisfy itself and looked no further. Indeed, there was no need to do otherwise. But in Twedt and in this case the will, in and of itself, does not clearly state testator's intention in relation to the source of funds to pay debts and taxes. It seems to me that the statute, section 633.437, directs us to also examine the testamentary plan (synonymous to me with the term estate plan) and the express or implied purpose of the devise. If we follow this directive the whole problem is considered in a different perspective. We are no longer confined to relatively rigid will construction canons but are told to look elsewhere; i. e., to the testamentary plan as evidenced by other dispositive arrangements for testator's property such as jointly owned property, life insurance, inter vivos trusts and the like, and to the size and general disposition of the entire holdings.

Consideration of section 633.437 as an "exception" was probably poor terminology. The comment to the Model Probate Code, section 184, from which the Iowa statute was taken reads:

"A testator may determine the order in which the assets of his estate are applied to the payment of his debts. If he does not, then the provisions of this section lay down rules which may be regarded as approximating his intent. However, his intent may be indicated not only by an express designation of a property or fund or by an express statement of the order in which assets are to be applied, but also by the implied purpose of the devise or by the general testamentary plan. Thus, it is commonly held that, even in the absence of statute, general legacies to a wife, or to persons with respect to which the testator is in loco parentis, are to be preferred to other legacies in the same class because this accords with the probable purpose of the legacies. Moreover, the general testamentary plan is often important in determining matters of abatement when the surviving spouse elects to take against the will. The same may be true where abatement takes place to provide for the share of a pretermitted heir. The provisions of subsection (b) [Sec. 633.437] embrace these and other situations of similar character."

The Iowa Bar Committee comment to § 633.436, I.C.A., rule reads:

"* * * This section adopts the modern rule of abatement and makes explicit the order in which the share shall abate in the absence of contrary testamentary intent."

These comments would indicate the thrust of the section is to determine testator's intent. Only after the intent remains undetermined is the formula in section 633.436 applied. Thus, to me at least, use of 633.437 should be the rule; use of 633.436 should be the exception.

It is submitted section 633.437 simply recognized the complexity of estate planning. The will is only one tool of the estate planner. It also recognizes that not every plan manages to provide for every contingency in clear and precise language. Thus when the abatement formula in 633.436 would defeat the entire plan the

court should provide an order of abatement to effectuate the intent of the testator.

In this case testator executed his will when he and his spouse were both 70 years old. He owned 611 acres of land valued three years later at $233,200. His personal property included U.S. Government Savings Bonds valued at $4900, certificates of deposit and checking accounts (all carefully kept within the federal insurance limits) valued at $30,000, joint certificates of deposit and savings accounts with his wife valued at $20,400 and $10,000 life insurance. Thus testator's widow and his executors had some $66,000 in quick, liquid, federally insured assets to handle the debts (minimal) and state and federal death taxes if the entire estate planning situation is considered.[1]

More than enough liquid personal assets were provided to take care of foreseeable contingencies. Section 633.449 requiring payment of estate taxes from the estate does not present a problem here because there were sufficient funds when taken with income (cf. Section 633.352) to pay all obligations. Testator's widow had the insurance, joint personal property and post-tax payment income from 600 acres of productive farm land to take care of her needs. While the will or other estate planning document might well have provided for a specific plan for payment of taxes, a plan predicated on the use of these liquid assets to take care of debts and taxes makes eminent sense. If such a plan is not used the mention of life estates and remainders is meaningless.

Understandably, testator decided he would like to preserve a remainder interest in the real estate for his children after his wife died. Further he knew and indicated just how he wanted the farm land to go. Various properties went to various children with various percentage interests. It is inconceivable to me that testator intended (or could have intended) the bequests of remainder interests to the children to be conditioned on their coming up with $50,000 in death taxes to be paid pending their mother's use of the property.

If the litigants insist on the letter of their rights in this case the solutions approach the ridiculous. One alternative under the majority's opinion is to sell the remainder interests under our probate procedures. In such event the widow must buy in those remainder interests or possibly see them go to adverse holders. The only other alternative is for the children to borrow the money and pay interest until their mother dies. The record reflects the fact that most of the children cannot afford to pay their proportionate share out of their own holdings.

Either of these solutions destroys the estate plan. Both the executor and the widow must have known this because the funds of the estate were used to pay the debts and taxes *and the widow makes no complaint.* As appellant points out, the practical construction placed on the will by the parties should have some weight.[2] In Re Estate of Larson, 256 Iowa 1392, 131 N.W.2d 503 (1964).

The difficulty occasioned by conflict between sections 633.436 and 633.437 seems to rise from several changes written into the new probate code. First the Iowa draftsmen added to the Model Probate Code "except properly devised to a surviving spouse" to subdivisions 2, 3 and 4 thus actually overprotecting the surviving spouse (the spouse can always elect not to take under the will). Second, real and personal property are treated alike, thus fixing the rigid formula of 633.436 on the entire estate.

---

1. Value of personal property in form of crops on the farm is not included. This value was $14,800 at testator's death.

2. Actually the widow and executors showed real honesty in their choice of solution.

It is obvious the opposite solution (urged by the state) would save them substantially more in federal estate tax costs than they will have to pay in state taxes. Cf. Analysis in Reed v. United States, 316 F. Supp. 1228, 1229, 1230 (E.D.Mo.1970).

In apparent recognition of problems arising from such an inflexible order of abatement, section 633.437 was added. This allows the court to order a different manner of abatement if the "provisions of the will, the testamentary plan, or the express *or the implied* purpose of the devise would be defeated." Admittedly this is an open invitation to litigation, not only among devisees and heirs but as here, among competing taxing bodies. Yet it is the only avenue afforded to do justice on a case by case basis. This court should accept the responsibility and order a new abatement formula (with care to fairly protect the interest of the surviving spouse) if the testamentary plan or the express or implied purpose of the devise so dictates. We have such a case here.

This may be substituting our judgment for testator's omission but this is what section 633.437 tells us to do. I would reverse.