Jessie M. COLTHURST and Keith Lord, Executors of the Estate of Roger Colthurst, Deceased, Appellants,

v.

George COLTHURST and Betty Caldwell, Appellees.

No. 60746.

Supreme Court of Iowa.

April 19, 1978.

As Amended July 26, 1978.

G. Gifford Morrison, Washington, for appellants.

Robert Day, Washington, for appellees.

Considered by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

MASON, Justice.

This is an appeal by plaintiffs, Jessie M. Colthurst and Keith Lord, executors of the estate of Roger Colthurst deceased. It stems from the district court's ruling sustaining objections by George Colthurst and Betty Caldwell, remaindermen under the decedent's will, to the executors' application and the amendment thereto entitled interlocutory final report for an order to proceed with the payments and distributions as set out in exhibit B attached to the application.

The appeal is authorized under section 633.36, The Code. See also Kurtz and Reimer, Iowa Estates: Taxation and Administration, section 18.3, p. 921.

May 12, 1975, Roger Colthurst died testate leaving a surviving spouse, Jessie Colthurst, age 81, to whom he had been married for 25 years, and two adult children by his first wife, George Colthurst, age 46, and Betty Caldwell, age 49. Pursuant to decedent's will, Jessie was made executor of his estate. Later, upon her application, Keith Lord was appointed co-executor of the estate.

In a preliminary tax report and probate inventory filed by Jessie, decedent's estate totaled $318,037.63, $300,000 of which represented the value of a farm owned by decedent which at the time of his death was leased to a Harlan Edgar. The remaining $18,037.63 consisted of $10,897.40 in proceeds from the sale of seed corn, $6,235.23 from decedent's share of property held in joint tenancy, $900.00 in household goods and $5.00 in stock. There is no dispute here as to the accuracy of this inventory.

Of importance here are the following provisions of decedent's will:

"ITEM I

"I direct that as soon as practicable after my death all of my just debts and funeral expenses be paid.

"ITEM II

"If my beloved wife, Jessie M. Colthurst, survive me, I give and bequeath to her all of my personal property of each and every kind whatsoever, as and for her absolute property.

" *　*　*

"ITEM III

"If my wife, Jessie M. Colthurst, survive me, I give, devise and bequeath to her the use, benefits, rents and profits in and to all real estate of which I die seized, for the term of her natural life. I also direct that my children, George Colthurst and Betty Caldwell, pay to my wife, Jessie M. Colthurst any balance due on my note payable to her, said note being in the principal sum of $12,500.00 dated July 6, 1971, which note represents the proceeds from the sale of Jessie's real estate, loaned to me on July 6, 1971. The provisions herein made in this, my Will, for my wife are in lieu of her dower interest in my estate."

Other provisions of the will provided that subject to the life estate of Jessie, the remainder interest in the farm was devised to George and Betty, with George having an option to purchase Betty's interest.

Jessie was to receive the following sums under the provisions of the will and otherwise: $12,470.46 as surviving joint tenant in the couple's bank accounts and in the couple's old car; $10,016.11 as beneficiary of life insurance policies on decedent; $900.00 in household goods as recipient of the personal property; $10,897.40 from the proceeds of the sale of seed corn as recipient of decedent's personal property; $7,500.00 still owed by decedent on the note payable to Jessie which the will provided the children should pay; and the $5.00 share of stock.

During the period of administration Jessie requested a widow's allowance from the estate and was granted $500 a month for one year.

■ Jessie Colthurst elected to take under the will, giving up the statutory dower right. Thus, she is considered a purchaser for value. *In re Estate of Hartman,* 233 Iowa 405, 409, 9 N.W.2d 359, 362; *Nolte v. Nolte,* 247 Iowa 868, 880, 76 N.W.2d 881, 888; *In re Estate of Twedt,* 173 N.W.2d 545, 548 (Iowa 1970).

The real estate owned by decedent was divided by a road with approximately 182 acres being located on the north side of the road and 193 acres being located on the south side of the road. The portion of the farm located on the north side of the road is principally pasture and timber for which the tenant who had been on the farm since 1958 paid cash rent annually of less than $500.00 and this arrangement was continued by the executors through March 1, 1977, and the expenses for taxes, insurance and maintenance each year were approximately $1500.00 per year making a let loss from this portion of the farm of approximately $1000.00 per year. Neither tract constituted a homestead.

June 6, 1976, Jessie and her co-executor filed an application for sale of real estate in the court. In this application they stated the estate had no personal property with which to pay the federal estate tax, Iowa inheritance, tax, and costs of administration and, therefore, it was necessary to sell a portion of the real estate for that purpose.

They asked approval of the court of a contract of sale into which they had entered to sell the 182 acres of timberland for $90,000. They proposed that the balance of the proceeds not used to pay the obligations of the estate remain in the life estate of Jessie and be used to pay her income as provided in decedent's will. George and Betty approved the executors' application for sale and joined with the executors in seeking court approval. The court approved the sale and the land was conveyed pursuant to the contract.

November 2, after the executors had had possession of the real estate during the crop years 1975 and 1976, they filed the application previously mentioned setting forth the income received by the estate, the expenses incurred, the debts and charges which the executors proposed to pay with the $90,000 of sale proceeds from the land and then proposed that any balance remaining from the $90,000 be placed in a separate savings account subject to any additional debts and charges of the estate with the income from the account being payable to the surviving spouse during her lifetime and the principal to be delivered to the remaindermen upon the death of Jessie M. Colthurst, the surviving spouse.

They explained the federal estate tax with interest and the Iowa inheritance tax had been paid in full.

They justified this proposed use on their belief the $90,000 was the type of property which abates under section 633.436, The Code, prior to abatement of property devised to a surviving spouse.

November 18, George and Betty filed objections to the application for order. January 11, 1977, the executors filed an amended application for order and an interlocutory final report.

In this application, they struck their original proposed use of the $90,000 and stated instead:

"That in addition to the above [the payment of all the debts and obligations of the estate], there will be taxes on the land sold, and there remains the unpaid note plus interest at 7% from the date of death of Roger Colthurst. In addition, there was lost to the surviving spouse, Jessie M. Colthurst, due to the sale of the real estate as aforestated, which sale was solely for the benefit of the remaindermen, her life estate interest in said real estate so sold. That it sold for $90,000.00 and the value of her life estate so lost is thus the sum of $19,836.00, which represents 4% each year on the basis of her life expectancy, based on the life expectancy tables in the Code of Iowa.

"In addition there will be extraordinary legal fees for the attorneys for this estate in view of the extended problems involved with the preparation and approval of this interlocutory final report.

"That these Executors proposed to apply all of the $90,000.00 received from the sale of the real estate to the above, and the balance remaining unpaid, due Jessie M. Colthurst, shall stand as a debt due her from the remaindermen, and a lien due her, or her heirs or assigns, attach to the remaining real estate in the estate, together with legal interest on all the same, till paid by said remaindermen, all as provided by Section 633.436 of the Code of Iowa."

February 2, George and Betty filed objections to the amended application and interlocutory final report. They stated Jessie had refused to mortgage the farm to pay the debts and obligations of the estate and, instead, had proposed the sale of the 182 acres. They explained an oral family agreement was reached whereby the proceeds of the sale were to be applied to the extent necessary to the payment of the debts and obligations of the estate.

In objection 2 they argued Jessie, by the family agreement and other actions, had estopped herself from now claiming any right to lost income from the real estate.

In objections 3 and 4 they explained the farm income for 1975 had been $13,038.36 and the estimated income therefrom in 1976 was $25,000.00.

In objection 5 they stated their belief it was the duty of the executors under section 633.351, The Code, to keep available the farm income from 1975 and 1976 to pay debts and general estate obligations incurred in those years.

In objection 6 they explained Jessie had reported the income received in 1975 on a personal income tax return rather than on a fiduciary report and the income tax payments shown in the report were amounts paid by her for the payments of the federal and state income taxes on her personal return.

In objection 7 they stated it was equitable to allow reimbursement to Jessie of the federal and state income taxes paid on the income, to allow her credit for the Iowa inheritance tax paid, and to allow her sufficient income for her support during 1975 and 1976.

In objection 8 they stated their belief " * * * the income for the year 1976 should be reported on a fiduciary income tax return with only the amount being attributed to Jessie M. Colthurst as may be determined to be a reasonable amount for her living expenses during the year 1976, with federal and state income tax being paid from the estate on the remainder of the income."

In objection 9 they pointed out that if these adjustments to the executors' proposal were made, a positive balance would be left which should be applied to pay the debts and general obligations of the estate.

In objection 10 they explained that if their plan were adopted there would be an estimated balance of principal from the sale of the real estate in the amount of $22,-468.36 which should be invested by the executors and held as part of the principal of the estate from which Jessie would be entitled to income for the remainder of her lifetime.

In objection 11 they stated no additional attorney fees should be charged to the estate because the position taken by the executors was contrary to the law and favored Jessie without regard to the rights and interests of the objectors.

The remaindermen attached to these objections a specific accounting which they contend should have been made by the executors and proposed adjustments which the remaindermen believed appropriate and equitable.

In the objections filed November 18 to the executors' original application the remaindermen pointed out the debts and charges which the executors proposed to pay from the $90,000 sale proceeds exceeded that fund by $7,892.51 without inclusion of court costs or the payment of property taxes on the real estate sold which would become payable in March and October of 1977 and without allowing any interest as claimed by the executors on the decedent's note of $7,500 held by Jessie. Under such a proposed distribution the remaindermen maintain there would be nothing left from the sale proceeds to provide income by way of interest for Jessie during her lifetime nor any balance from the sale proceeds to be delivered to George and Betty upon Jessie's death.

February 11, 1977, a hearing was held in this matter. April 20, the court filed its order sustaining objections 2, 5, 8 and 10 upon the basis and for the reasons therein stated.

In an effort to afford a better understanding of the problems presented we summarize the effect of the court's ruling in much the same manner as suggested by the remaindermen in their brief and argument.

By sustaining objection 2 the court found Jessie M. Colthurst, by her actions and agreements, has estopped herself from changing her position and claiming any right to lost income from the real estate which had been sold in order to provide funds to pay taxes, debts, and other general estate obligations.

By sustaining objection 5 the court found it was the duty of the executors to keep the farm income as shown in their report available to pay debts and general estate obligations during the years 1975 and 1976 pursuant to section 633.351 and section 633.352 of the Iowa Code.

By sustaining objection 8 the court directed the 1976 income should be reported on the fiduciary income tax return with the only amount being attributed to Jessie M. Colthurst as may be determined to be a reasonable amount for her living expense during the year 1976, with federal and state income tax being paid from the estate on the remainder of the income. A living allowance of $6,000.00 was proposed by the objectors.

By sustaining objection 10 the court approved schedule 2 attached to the remaindermen's original objections, which showed an estimated balance of principal in the amount of $22,468.36 to be deposited and held by the estate with income payable to Jessie M. Colthurst during her lifetime, and approved the general accounting set forth on schedule 1 which contained estimated value of the 1976 crop. The amount received from the 1976 crop has since been reported to the remaindermen as being in the amount of $21,275.36 rather than $25,-000.00 as estimated by the remaindermen.

In our view the contentions of the parties present the following questions for review:

1. Is a surviving spouse-executrix entitled to all income from the date of decedent's death from a leased farm where she has been specifically devised all personal property and the use, benefits, rents and profits derived from leased real estate during her lifetime?

2. Is a surviving spouse-executrix entitled to indemnification from the remaindermen for loss of her life estate income sustained when, during the administration of the estate, farmland is sold by her pursuant to an agreement with the remaindermen that the land be sold and the proceeds therefrom be applied to pay the debts and general obligations of the estate?

I. The remaindermen contend the net income from the real estate during the years 1975 and 1976 pursuant to sections 633.351 and 633.352, The Code, should first be used to pay the taxes and general estate obligations with the proceeds from the sale of the real estate being used to pay the remainder of such estate taxes and other general estate obligations.

Executors, on the other hand, contend Jessie is entitled to all income from a leased farm from the date of decedent's death because she has been specifically devised all personal property and the use, benefits, rent and profits from all real estate owned by decedent at the date of his death. They base this contention on their belief the terms of decedent's will make sections 633.-351 and 633.352, The Code, inapplicable. These sections provide:

"633.351 Possession of real and personal property. If there is no distributee of the real estate present and competent to take possession, or *if there is a lease of such real estate outstanding,* or if the distributees present and competent consent thereto, *the personal representative shall take possession of such real estate,* except the homestead and other property exempt to the surviving spouse. Every personal representative shall take possession of all the personal property of the decedent, except the property exempt to the surviving spouse. The personal representative may maintain an action for the possession of such real and personal property or to determine the title to any property of the decedent.

"633.352 Collection of rents and payment of taxes and charges. *Unless otherwise provided by the will,* the personal representative shall collect the income from the property of which he has possession, pay the taxes and fixed charges thereon and apply the balance of such income to general estate obligations. *Unless otherwise provided by the will,* any unexpended portion of such income shall become a part of the general assets of such estate." (Emphasis supplied).

The executors' contention section 633.351 is inapplicable in the present case is without merit. Because the farm was leased at the time of decedent's death the section is clearly applicable. Thus, the executors were required to take possession of the farm.

If sections 633.351 and 633.352 were the only sections of the Code applicable here, then under the remaindermen's theory, as previously indicated, the money received as income would go to pay the debts and obligations of the estate. The portion of the $90,000 from the sale of the 182 acres, not used to pay any remainder of the debts and obligations of the estate, would then be invested with the income therefrom to go to Jessie as holder of a life estate in the farm. Upon her death the original amount invested would go to the remaindermen as princi-

pal or to George if he has previously exercised the option given him in the will.

On the other hand, while still assuming sections 633.351 and 633.352 were the only statutes applicable, under the executors' theory the money received as income would be paid to Jessie under Item III of decedent's will. The $90,000 would be used to pay the debts and obligations of the estate. Here, as pointed out, the total of such debts and obligations exceeds $90,000 and, consequently, there would be nothing left of the $90,000 to pay to the remaindermen upon Jessie's death.

The executors maintain the district court ignored both the terms of decedent's will and the provisions of section 633.436, The Code, in reaching its decision.

Section 633.436 provides in pertinent part:

"Except as provided in section 633.211 [intestate share of surviving spouse if decedent left issue], shares of the distributees shall abate, for the payment of debts and charges, federal and state estate taxes, legacies, the shares of children born or adopted after the making of a will, or the share of the surviving spouse who elects to take against the will, without any preference or priority as between real and personal property, in the following order:

" *    *    *

"3. Property disposed of by the will, but not specifically devised and not devised to the residuary devisee, except property devised to a surviving spouse who takes under the will;

" *    *    *

"5. Property devised to a surviving spouse who takes under the will."

■ Abatement, in Iowa, is generally governed by this statute which specifically delineates the order in which bequests stand aside in deference to debts, charges and federal and state estate taxes unless the provisions of the will, the testamentary plan or the express or implied purpose of the devise would be thereby defeated. *In re Estate of Noe,* 195 N.W.2d 361, 363 (Iowa 1972).

At the time of decedent's death section 633.437 was as follows:

"If the provisions of the will, the testamentary plan, or the express or implied purpose of the devise would be defeated by the order of abatement stated in section 633.436, the shares of distributees shall abate in such other manner as may be found necessary to give effect to the intention of the testator."

This section was twice amended thereafter. See section 3.7, The Code, 1975; 1975 Regular Session, Sixty-sixth General Assembly, chapter 208, p. 492; and 1977 Regular Session, Sixty-seventh General Assembly, chapter 145, section 3.

Section 633.437 in substance provides for a contrary order of abatement only in that unusual case where the general scheme provided for in section 633.436 would defeat (1) the provisions of the will, (2) the testamentary plan, or (3) the express or implied purpose of the devise.

The executors argue section 633.437 is not to be invoked here because their proposed use of the $90,000 would neither defeat the provisions of the will, the testamentary plan, nor the express or implied devise.

Two questions are presented for determination:

1. Do the provisions of the will make section 633.352 inapplicable?

2. Does the planned use of the $90,000 defeat the provisions of the will, the testamentary plan, or the express or implied purpose of the devise of the decedent?

■ The answer to the first question is yes. As noted by Item III of his will, decedent devised to Jessie the use, benefits, rents and profits in and to all real estate of which he died seized, for the term of her natural life. This term of the will clearly provides for a distribution other than that set out in section 633.352. Thus, if section 633.437 is not involved here the $90,000 may be used as the executors proposed.

In regard to the second question the executors direct attention to several cases they

find supportive of their contention section 633.437 is inapplicable here. Remainder-men contend these cases support their position.

In our opinion the case most nearly applicable here is *In re Estate of Noe,* 195 N.W.2d 361 (Iowa 1972). There the court was faced with the issue whether abatement should be in accord with section 633.-436 or section 633.437.

In *Noe* the testator's estate consisted of personalty worth $51,729.55, joint property and life insurance in the amount of $30,-692.89 and real property valued at $233,-275.00. His will provided his wife receive all the personal property and a life estate in the real property, remainder to the five children, each being devised a specific parcel.

The executors used the personal property devised to the wife for payment of the estate's obligations which amounted to $53,-047.49. They then filed a final Iowa inheritance tax return in which they calculated the tax on the basis of their abatement decision. The Iowa Department of Revenue charged an additional amount of tax which they explained to the executors was necessary because the executors could not under section 633.436 abate as they had. The executors paid the tax and sued the Department for a refund claiming section 633.437 applied and, therefore, their abatement decision was correct. The district court held the Department was correct and the executors appealed.

In its decision this court pointed out abatement should occur as dictated under section 633.436 unless a contrary testamentary intent is shown. It was noted section 633.437 only applies in " * * * that unusual case where the general scheme provided for in § 633.436 would defeat (1) provisions of the will, (2) the testamentary plan, or (3) the express or implied purpose of the devise. * * * [citing authorities]." *Noe,* 195 N.W.2d at 363.

This court then looked to all the language contained within the will and found the decedent's will neither unusual nor ambiguous. This language was found to evidence clearly an intent on the testator's part to provide first for his wife in the event she survived him. The court found this intent manifested by the bequest to the wife of all the personalty and the creation of the life estate. Thus, this intent would be carried out if the wife's personalty were not first abated.

The court then determined that if section 633.437 applied, the abatement of the bequest of personalty to the wife as proposed by the executors would " * * * obviously destroy the absolute bequest of personalty to decedent's widow. In other words it would unquestionably defeat testator's testamentary plan. * * *." *Noe,* 195 N.W.2d at 364. This the court would not allow.

Not noted in the opinion in *Noe* was the fact the testator's will, as here, provided first for the executors to pay the debts and claims of the parties. This fact is of little importance to our determination here because this provision " ' * * * merely recites the duty which every executor or administrator would have under the law. * * *.' * * * [citing authorities]." *In re Estate of Kraft,* 186 N.W.2d 628, 632 (Iowa 1971).

■ As pointed out, Jessie M. Colthurst took under decedent's will. She made this election in light of a specific provision in Item III that the provisions made in the will for her were in lieu of her dower interest in decedent's estate. Under these circumstances in view of the express provision of section 633.436(5) the bequests to her would be last in the order of abatement. In other words, under this statute the bequests to her cannot be used to pay debts, charges and federal and state estate taxes until all non-exempt property of the estate has first been applied thereon. This order of abatement governs here unless the provisions of the will, the testamentary plan or the express or the implied purpose of the devise are thereby defeated.

In the present case there is nothing unusual or ambiguous in decedent's will. The language of the will in Items II (the be-

quest to Jessie of all of decedent's personal property as her absolute property), III (a devise to Jessie of the use, benefits, rents and profits in and to all of decedent's real estate for the term of her natural life), and IV (the bequest to the children subject to the life estate of Jessie) clearly manifests an intent on the part of the testator to provide first for his wife in the event she survived him and afterwards for his children. This intent will only be carried out if the order of abatement provided for in section 633.436 is followed as proposed by the executors. Section 633.437 is not applicable.

■ It necessarily follows Jessie M. Colthurst, as surviving spouse, was entitled to all income from the date of decedent's death from the leased farm. The trial court erred in sustaining objections 5, 8 and 10.

II. Jessie contends she is entitled to indemnification for the life estate income she will lose by the selling of the 182 acres of the farm to pay the debts and obligations of the estate. The remaindermen contend Jessie is estopped to assert this claim because she participated in the family agreement to sell the land.

At the hearing on the amended application for order and interlocutory final report, the only witness to testify was George Colthurst. At the hearing several matters were established.

The part of the farm sold was losing money. Jessie had refused to mortgage the land to pay the debts and obligations of the estate and wanted to sell it to the tenant for $70,000. The agreement did not provide for extra compensation to Jessie for loss of the income from the land sold.

On appeal the executors contend Jessie had no other choice but to sell the land to pay the debts and obligations. If she had mortgaged the land it would have taken away all the income from the farm to which she was entitled.

■ Equitable estoppel proceeds from the premise that one who has made certain representations should not thereafter be permitted to change his position to the prejudice of one who has relied thereon; the principle is resorted to when injustice would otherwise result.

■ Burden of proving estoppel is on the party asserting it; strict proof of all elements is demanded. *Pillsbury Co. v. Ward,* 250 N.W.2d 35, 39 (Iowa 1977).

■ Promissory or equitable estoppel requires proof of three essential elements: (1) a clear and definite oral agreement; (2) that plaintiff acted to his detriment solely on said agreement; and (3) that a weighing of all the equities entitles plaintiff to the equitable relief of estoppel. *Serv. Emp. Intern., etc. v. Cedar Rapids, etc.,* 222 N.W.2d 403, 408 (Iowa 1974).

■ Under our de novo review we conclude the remaindermen failed to carry their burden of proof.

Nevertheless, the second question presented for review which is stated earlier remains to be answered.

■ In this connection we call attention to the fact the sale of the 182-acre tract was a judicial sale recommended for court approval by the executors and remaindermen. The agreement between the interested parties was oral and so far as the record discloses there was no agreement as to how the proceeds received from the sale were to be divided except that such proceeds were to be applied to the extent necessary to pay the debts and obligations of the estate. As shown, the debts, charges and federal and state estate taxes now exceed the amount of proceeds from such sale. Hence, there is nothing left from the sale proceeds to distribute between Jessie and the remaindermen or to be invested for Jessie's benefit.

In the amended application designated interlocutory final report the executors struck the original proposed use of the $90,-000 and now contend Jessie is entitled to indemnification from the remaindermen in the sum of $19,836.00, which represents her life expectancy of 5.51 years at four percent for each year for loss of income during her natural life by reason of the sale of the 182-acre tract.

We have determined section 633.437 is not to be invoked under the factual circumstances before this court; the use of the $90,000 as proposed by the executors has been approved earlier in this opinion.

The problem is what is to be done to compensate Jessie as the life tenant for the loss of income from the sale of the land.

The executors in brief and argument concede the problem presented by their contention has not been heretofore-decided by this court. They cite no authority from any other jurisdiction dealing with this problem.

Iowa has no statute providing the method of settlement with a life tenant upon sale of the life estate.

Prior to the sale Jessie, as the life tenant, had only a right to the use, benefits, rents and profits of the land. Her life estate in the 182-acre tract was terminated as a result of the sale which was approved by the court. Although the sale was approved by order dated July 16, 1976, under the terms of the contract possession of the tract was to be delivered March 1, 1977. At that time her interest was transformed from an interest in the real estate to an interest in the proceeds of sale.

The sale price of the 182-acre tract was, as stated, $90,000. According to the remaindermen's objections filed February 1, 1977, the expenses of the sale totaled $7,173.00. There was an additional item of real estate taxes on the tract which was payable in March and October 1977. The total of the taxes does not appear in the record other than as an estimate of $973.35.

In our opinion there should be deducted from $90,000 the amount of the sale costs plus the taxes payable in 1977. The figure thus arrived at would represent the basis for computing the income to be paid Jessie annually during her lifetime commencing March 1, 1977.

We are convinced such method of calculation would be in accord with the decedent's testamentary plan.

There is nothing in the record to advise this court as to what rate of interest represents a fair return on an investment such as contemplated by this opinion. The matter is therefore remanded with directions to the trial court to determine after hearing on notice the exact basic figure to be used and then determine a fair return on such an investment. Jessie M. Colthurst shall have a lien for the amount so ascertained against the remaining real estate in this estate in her favor or in favor of her heirs or assigns.

The executors shall then proceed to close this estate in accordance with chapter 633, The Code.

The case is therefore

Reversed and remanded with directions.